**VICTORY HIGHWAY VILLAGE, INC., a Minnesota Corporation, and James T. Dalton and Joanne A. Dalton, husband and wife, Plaintiffs,**

v.

**A. Vernon WEAVER, as Administrator of the Small Business Administration, Defendant.**

No. 4–78 Civ. 490.

United States District Court, D. Minnesota, Fourth Division.

Oct. 12, 1979.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court upon the motion of the plaintiff for summary judgment pursuant to Rule 56 of the Fed.R. Civ.P. Briefs were submitted by both parties and oral argument was heard on the motion.

## FACTUAL BACKGROUND

Plaintiff Victory Highway Village, Inc. is a Minnesota corporation with its principal office located in Mankato, Minnesota, where it owns and operates a mobile home park. James T. Dalton and Joanne A. Dalton are husband and wife, and James T. Dalton is the president of Victory Highway

Village, Inc. Immediately adjacent to the property on which the mobile home park is located in Mankato was property owned by Dalton Motors, Inc., a Minnesota corporation, which owned and operated a Chrysler-Plymouth dealership for 25 years until May of 1977.

Defendant Small Business Administration (SBA) made three individual loans to Dalton Motors, Inc. for construction of a building on the premises owned by Dalton Motors, Inc. to house the Chrysler-Plymouth agency. The loans were as follows:

| | |
|---|---|
| October 6, 1972 | $104,000 |
| October 6, 1972 | 508,000 |
| September 28, 1973 | 63,000 |

By terms of the various agreements, the $104,000 loan was a first priority, the $508,000 loan was a second priority, and the $63,000 loan was a third priority. The $508,000 loan was made by the SBA pursuant to 15 U.S.C.A. § 636(b)(3) and the other two loans were made pursuant to 15 U.S. C.A. § 636(a).

All three loans were secured by three separate mortgages on the real estate owned by Dalton Motors, Inc. In addition, the SBA obtained a guaranty on the $508,000 loan from the plaintiff Victory Highway Village, Inc. That guaranty was secured by a second mortgage on the property owned by plaintiff Victory Highway Village, Inc., which is presently being used for the mobile home park.

In addition to the guaranty and security given by Victory Highway Village, Inc., the SBA obtained three separate guaranties signed by James T. and Joanne A. Dalton as additional security for all three loans.

Dalton Motors, Inc. was unable to meet its payment schedules for the mortgages and defaults occurred. In June, 1977, the SBA initiated a mortgage foreclosure proceeding on all three mortgages given by Dalton Motors, Inc. On August 5, 1977, the sheriff's sale was held. The SBA was the successful bidder at the sale with a bid of $440,169.53. The SBA later sold the property for $465,000 pursuant to an auction held on December 28, 1978.

As of June 9, 1977, Dalton Motors, Inc. was indebted to the SBA in the total amount of $753,009. A deficiency balance remains after the real estate foreclosure as of February 13, 1979, in the sum of $342,-999.74.

The procedures followed for purposes of effecting the foreclosure sale were those as set out in Minn.Stat., Chap. 580, which establishes a procedure allowing foreclosure of a mortgage by advertisement. In effecting the foreclosure, the SBA elected to grant a six-month redemption period pursuant to M.S.A. § 580.23, which provides in part as follows:

Subdivision 1. When lands have been sold in conformity with the preceding sections of this chapter the mortgagor, his personal representatives or assigns, within six months after such sale, except as otherwise provided in subdivision 2, may redeem such lands, as hereinafter provided, by paying the sum of money for which the same were sold, with interest from the time of sale at the rate provided to be paid on the mortgage debt, not to exceed eight percent per annum and, if no rate be provided in the mortgage, at the rate of six percent per annum, together with any further sums which may be payable pursuant to section 582.03. Where the redemption period is as provided in this subdivision the mortgagee, or his successors, assigns, or personal representatives, or any other purchaser so purchasing at the sheriff's sale shall by purchasing the property at the sheriff's sale thereby waive his right to a deficiency judgment against the mortgagor.

In October, 1977, Dalton Motors, Inc. initiated a declaratory judgment action against the SBA claiming that M.S.A. § 580.23, subd. 1, granted the SBA a short six-month redemption period, but also required the SBA to waive its right to a deficiency judgment against Dalton Motors, Inc. In *Dalton Motors, Inc. v. Weaver*, 446 F.Supp. 711 (1978), Judge MacLaughlin agreed with the position of Dalton Motors, Inc. and held that the indebtedness represented by the notes and real estate mort-

74

gages executed by Dalton Motors, Inc. to the SBA were discharged once the SBA availed itself of the procedural advantages of foreclosure by advertisement under Minnesota law.

## DALTON MOTORS CASE

The initial issue which the court must resolve is whether or not the doctrine of collateral estoppel applies in this case to prevent the SBA from challenging the conclusions reached by Judge MacLaughlin in the *Dalton Motors* case.

■ Collateral estoppel is appropriate where: (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Gerrard v. Larsen*, 517 F.2d 1127 (8th Cir. 1975) and *Oldham v. Pritchett*, 599 F.2d 274 (8th Cir. 1979).

■ The court finds that the *Gerrard* factors are satisfied in this case and, accordingly, the SBA is estopped from challenging the conclusions reached by Judge MacLaughlin in the *Dalton Motors* case on issues which are presented in this case and which are identical to ones already decided by Judge MacLaughlin in the prior case. It appears to the court that the following two issues were decided by Judge MacLaughlin in the *Dalton Motors* case:

1. Federal law governs this factual situation, but the application of state law is the more desirable rule of federal law and state law should be adopted as the federal rule of decision;

2. The SBA waived its rights to collection of a deficiency judgment against the mortgagor, Dalton Motors, Inc., by its use of the summary foreclosure procedure authorized by Minn.Stat., Chap. 580, and the indebtedness of Dalton Motors, Inc. on the notes and mortgages in question was therefore discharged.

■ The court finds that the doctrine of collateral estoppel prevents the SBA from

contesting either of the above issues previously decided by the court in the case of *Dalton Motors, Inc. v. Weaver*, 446 F.Supp. 711 (1978). However, the *Dalton Motors* case did not address the issue of the liability of the guarantors in the present situation, since only the mortgagor and the mortgagee were involved in the prior lawsuit. As a result, the doctrines of collateral estoppel and res judicata do not prevent the court from deciding the liability of the plaintiffs (guarantors) in this action.

## MINNESOTA LAW

Since the more desirable rule of federal law is the application of state law, it is first necessary to turn to M.S.A. § 580.23, Subd. 1, in order to determine if this statute precludes the SBA from asserting its contractual claims against the plaintiff guarantors.

M.S.A. § 580.23 specifically provides that a mortgagee who purchases the property at the sheriff's sale waives his right to a deficiency judgment against the mortgagor.

■ Where there is no uncertainty or ambiguity in statutory language, the statute speaks for itself and there is no room for judicial construction. *Arlanson v. Humphrey*, 224 Minn. 49, 27 N.W.2d 819 (1947) and M.S.A. § 645.16.

■ It is clear from reading Subd. 1 of M.S.A. § 580.23 that the trade-off for utilizing the six-month redemption period is a waiver of the right to a deficiency judgment against the mortgagor. The statute provides for a waiver of right against the mortgagor only and does not provide for a waiver of right against any other parties; nor does the statute provide for a discharge of the debt which the mortgage secures.

It appears to the court that, had the Minnesota Legislature intended to include the release of guarantors or any party other than the mortgagor, it would have explicitly provided for such in the statute. For instance, the State of Alaska has an anti-deficiency statute which specifically protects the mortgagor, his surety or guarantor from liability for a deficiency judgment in a similar type of situation. Also, Califor-

nia has an anti-deficiency statute which prohibits a deficiency judgment without specifying what class of persons benefit by the provision. California courts have construed this as protecting only the purchaser or mortgagor and as not encompassing protection of the guarantors nor discharging the underlying obligation (even though the California statute is clearly broader than § 580.23). *See Gottschalk v. Draper Companies*, 23 Cal.App.3d 828, 100 Cal.Rptr. 434 (1972), *Heckes v. Sapp*, 229 Cal.App.2d 549, 40 Cal.Rptr. 485 (1964) and *Miller v. Steward*, 529 F.2d 310 (9th Cir. 1976).

As a result, the court concludes that a mortgagee who uses the summary foreclosure proceeding contained in M.S.A. § 580.-23, Subd. 1, waives any right to obtain a deficiency judgment against the mortgagor, but is not precluded by § 580.23 from seeking a deficiency judgment against the guarantors.

Since M.S.A. § 580.23, Subd. 1, does not preclude the defendants from obtaining a deficiency judgment against the plaintiffs, as guarantors, it becomes necessary to determine if common law principles prevent the defendants from seeking such relief.

■ The general rule relating to the obligation of a guarantor on a guaranty contract is as follows:

> Where the principal debtor has not made complete payment or has not completely performed the guaranteed contract, but the effect of the creditor's acts is nevertheless to release or discharge him, the guarantor is also discharged, unless the guarantee's right of recourse against the guarantor is expressly reserved in the contract releasing the principal, or in the guaranty contract. 38 C.J.S., *Guaranty*, § 83, p. 1252. *Also see Fruehauf Trailer Company of Canada, Ltd. v. Chandler*, 67 Wash.2d 704, 409 P.2d 651 (1966) and *Continental Bank & Trust Co. v. Akwa*, 58 Wis.2d 376, 206 N.W.2d 174 (1973).

In the case of *Union Bank v. Gradsky*, 265 Cal.App.2d 40, 71 Cal.Rptr. 64 (1968), the California court estopped the creditor bank from proceeding against a guarantor since the bank had proceeded under a non-judicial remedy which extinguished the possibility of a deficiency judgment. The court said that the bank had a duty to the guarantor not to impair his subrogation remedies against the principal debtor. However, the court finally indicated that

> having chosen a remedy which destroyed both the security and the possibility of the guarantors' reimbursement from the principal debtor, the bank is estopped, there being no specific waiver in the guaranty agreement to this defense.

Both parties have cited the foregoing principles of guaranty law as the general rules applicable to the present situation and neither party has cited any Minnesota statutes or cases which contradict these general rules. Accordingly, the court finds that the Minnesota courts would adopt and follow the general rules of guaranty law previously set forth.

By its use of the summary foreclosure procedure authorized by Minn.Stat., Chapter 580, the SBA waived its rights to a deficiency judgment against the mortgagor, Dalton Motors, Inc., and therefore the indebtedness of Dalton, Motors, Inc. was discharged as established in *Dalton Motors, Inc. v. Weaver*, 446 F.Supp. 711 (1978). Since the actions of the SBA resulted in a release or discharge of the principal debtor, Dalton Motors, Inc., the guarantors would also be discharged from their obligations unless the SBA's right of recourse against the plaintiff guarantors was expressly reserved in the guaranty contract. Thus, it is necessary for the court to examine the specific language of the guaranty contract in order to ascertain the intent of the parties with regard to the liability of the plaintiff guarantors.

### THE GUARANTY CONTRACT

■ The intent of the parties to a guaranty is derived from commonly accepted meanings of words and clauses used, taken as a whole and the guaranty is not to be unduly restricted by technical interpreta-

tion or enlarged beyond the fair and natural import of its terms. *American Tobacco Co. v. Chalfen*, 260 Minn. 79, 108 N.W.2d 702 (1961).

The Minnesota Supreme Court in *Dahmes v. Industrial Credit Co.*, 261 Minn. 26, 110 N.W.2d 484 (1961) held that "in the absence of language clearly indicating that the guaranty is conditional, it is usually treated as absolute." 110 N.W.2d at 489.

■ Here, a reading of the language contained in the guaranty agreement clearly indicates that the guaranty is absolute and unconditional, and that plaintiffs are liable even if the principal debtor is discharged from any or all of its liability. For instance, the first paragraph of the guaranty contains language stating that "the Undersigned (guarantors) hereby unconditionally guarantees to Lender . . . payment when due."

In paragraph two, the guarantors granted the SBA "full power in its uncontrolled discretion . . . to deal in any manner with the liabilities and collateral," including the power "to modify or change any terms of all or any part of the liabilities . . . or to effect any release, compromise, or settlement with respect thereto." The guarantors also consented to "the substitution, exchange, or release of all or any part of the collateral."

The guaranty also provides that "the obligations of the guarantors shall not be released, discharged, or in any way affected . . . by reason of any action the SBA may take or omit to take under the foregoing powers." Finally, the guaranty provides that the obligations of the guarantors shall not be released, discharged, or in any way affected by reason of the fact that any of the collateral or any of the liabilities may be invalid or defective in any way.

The language contained in the guaranty clearly provides for the unconditional liability of the guarantors, regardless of whether or not the obligation of the principal debtor has been released, discharged or altered in any manner. Other courts have construed the SBA form of guaranty to be absolute and unconditional in nature. *See Duke v. Reconstruction Finance Corp.*, 209 F.2d 204 (4th Cir. 1954) and *United States v. Houff and Keefer*, 202 F.Supp. 471 (W.D.Va.1962).

This conclusion is also supported by the case of *United States v. Beardslee*, 562 F.2d 1016 (6th Cir. 1977). The *Beardslee* court interpreted the exact guaranty agreement involved in this case (SBA Form 148), and held that as a matter of federal law, the release of the principal debtor did not discharge the obligation of the guarantors under the agreement. In *Beardslee* the SBA entered into a settlement agreement with the principal debtors and then sought payment directly from the guarantors for the balance remaining due under the promissory notes. The court held the guarantors absolutely liable "based upon a reasonable interpretation of the clear and unambiguous language contained in [SBA] Form 148." 562 F.2d at 1023.

Plaintiffs attempt to distinguish *Beardslee* by arguing that there is a distinction between the word "release" and the word "extinguished," the latter of which was used in the *Dalton Motors* case. Language in the guaranty agreement provides that "in case the debtor shall fail to pay all or any part of the liabilities when due . . . the guarantors will pay to the SBA the amount due and unpaid by the debtor." The essence of plaintiffs' argument is that there is no debt due and owing from the principal debtor since the obligation was "extinguished." As a result, the condition precedent has not been satisfied and the guarantors should not be liable.

First, it should be noted that the holding of the court in the *Dalton Motors* case was that the "defendant has waived his rights to collection of a deficiency judgment and that therefore plaintiff's indebtedness to defendant on the notes and mortgages in question is discharged." 446 F.Supp. at 716. While it is true that the court in *Dalton Motors* stated in a footnote that the mortgagee's purchase at the foreclosure sale "extinguished" plaintiff's indebtedness under the mortgage, it is obvious that the court used the word "extinguished" in a

general sense (as a synonym for the words discharged or released) and did not intend the word "extinguished" to be the central holding of the case. It is also clear that the court did not intend that the "extinguishment" affect any party other than the mortgagor Dalton Motors, Inc. and the SBA, or any obligation other than that owed by Dalton Motors, Inc. to the SBA. Indeed, the present plaintiff guarantors were not even parties to the *Dalton Motors* case and, as a result, the question of the liability of the guarantors was simply not an issue in that case. The only issue before the court in *Dalton Motors* was the liability of the mortgagors, Dalton Motors, Inc.

Plaintiffs' argument is really based more upon semantics than it is upon substance. Whether the obligation of the mortgagor, Dalton Motors, Inc. was released, discharged or "extinguished" is really of no significance since the plaintiffs unconditionally guaranteed their obligation regardless of what happened to the obligation owed by the mortgagor, Dalton Motors, Inc. Plaintiffs' argument is especially lacking when one considers the language of M.S.A. § 580.-23, Subd. 1. That statute provides that the mortgagee who uses that section "waives" his right to a deficiency judgment against the "mortgagor." It does not provide for "extinguishment" of the principal debt owed by the mortgagor and it does not provide that the mortgagee waives his right to a deficiency judgment against any party other than the mortgagor.

The court would simply have to strain the language of the guaranty, the language used in the *Dalton Motors* case, and the language of M.S.A. § 580.23, Subd. 1, too far in order to accommodate plaintiffs' arguments.

Upon the foregoing,

IT IS HEREBY ORDERED That the motion of the plaintiffs for summary judgment based upon Rule 56 of the Fed.R. Civ.P. be and hereby is in all things denied.