**Robin COOK, Appellant,**

v.

**John S. CONNOLLY, Respondent.**

**No. C6–83–2043.**

Court of Appeals of Minnesota.

Aug. 14, 1984.

Review Granted Nov. 8, 1984.

Michael J. Healey, St. Paul, for appellant.

Steneroden & Hughes, Thomas R. Hughes, St. Paul, for respondent.

Heard by POPOVICH, C.J., and FOLEY, and LESLIE, JJ. Considered and decided en banc by POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, SEDGWICK, LESLIE, and RANDALL, JJ.

## OPINION

PARKER, Judge.

This is a case of first impression, requiring this court to determine whether the appellant, who is now an adult, may bring an action for malpractice against an attorney who represented her interests in proceedings which resulted in a minor settlement.

### ISSUE

Does the doctrine of collateral estoppel bar relitigation of the issue of the adequacy of a minor settlement in a subsequent

malpractice action against the attorney for the guardian ad litem?

## FACTS

At the age of four, plaintiff-appellant lost her arm as a result of an accident involving a wringer washing machine. Appellant's mother retained the respondent-at-torney, John S. Connolly, to represent appellant in a lawsuit against the washing machine company and others. The lawsuit was settled on the morning of trial for a sum of $15,000.

When the appellant came of age 14 years later, she brought this action against respondent for legal malpractice, alleging that his representation had been negligent in that he failed to assert a claim in strict liability against the Maytag Company, manufacturer of the machine by which she sustained injury, or to conduct discovery of officials or employees of the Maytag Company. She asserted further that all of this claimed negligence resulted in an inadequate settlement. No claim of fraud or misrepresentation was alleged. The respondent moved for summary judgment, claiming that appellant did not meet the privity requirements for a legal malpractice lawsuit and that, absent fraud, the court-approved settlement was final.

The trial court dismissed appellant's complaint, determining as a matter of law that appellant had no cause of action unless she could demonstrate fraud. Appellant has appealed from that determination.

## DISCUSSION

The trial court disallowed the present action because of its belief that court-approved settlements of claims on behalf of minors should be final. The court reasoned, "The allowance of collateral attacks on such settlements in proceedings such as this would undoubtedly create temporary chaos and long-range instability and uncertainty that may well make the entire procedure as presently structured an exercise in futility." The court therefore concluded that because minor settlements should be viewed as final, a minor, upon reaching the age of majority, has no cause of action against an attorney who represented her interests in a personal injury action resulting in a minor settlement unless the minor demonstrates fraud.

The foregoing view of the finality of a court-approved minor settlement is based on hoary, yet vital, precedent. In *Lathrop v. Schutte*, 61 Minn. 196, 197, 63 N.W. 493, 494 (1895), the Supreme Court held that "[t]he judgment in [an action by a parent maintained on behalf of a minor child] is a bar to any subsequent action for the same cause prosecuted by the minor, by his guardian, general or ad litem, or by himself, when he reaches his majority."

In more recent years, it has been recognized that, upon attaining majority, a minor may, on a limited number of grounds, seek to have a court-approved minor settlement set aside. In *Eliseuson v. Frayseth*, 290 Minn. 282, 187 N.W.2d 685 (1971), the Minnesota Supreme Court held that a minor settlement may be vacated either by an independent action or by a motion under Rule 60.02(6), Minn.R.Civ.P., which allows relief from a final order, judgment or proceeding for "any * * * reason justifying relief." The *Eliseuson* court noted:

This court has repeatedly held that the trial court may, for good cause, review an order approving a minor's settlement made pursuant to Minn.St. 540.08, and that if, upon such review, it appears that such settlement was based upon a mutual mistake of fact, it may vacate and set aside its order of approval.

290 Minn. at 284, 187 N.W.2d at 686 (citations omitted).

In the instant case, appellant is not seeking to have the judgment set aside but brings an independent action for malpractice against her former attorney.

■ The trial court characterized this action as a collateral attack on a court-approved minor settlement, ruling that in the absence of fraud it could not be sanctioned on any theory of law. We agree that this purportedly independent action is barred by the doctrine of collateral estoppel.

The essential nature of this aspect of res judicata was recently stated with clarity in *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702 (Minn.1982). There, the Commission sought to bring a race discrimination charge against Ellis based on his behavior toward his tenant, a native American. Ellis contended that the case was barred because the issue of race discrimination had been litigated in a prior action for unlawful detainer. The Supreme Court defined collateral estoppel as:

[precluding] the relitigation of issues which are both identical to those issues already litigated by the parties in a prior action and necessary and essential to the resulting judgment. *See* 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.443[1] (2d ed. 1948). The application of collateral estoppel is appropriate where:

(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Id.* at 704, quoting *Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71, 74 (D.Minn.1979).

In reversing on that basis, the Court found that the issue raised in the prior action was identical to that in the case at bar. Although the earlier verdict had not been reduced to a formal judgment, "where the parties have acquiesced in the verdict," and "where, through the lapse of time or other cause, a motion for a new trial or arrest of judgment cannot be granted," the Court said estoppel in the form of issue preclusion may still apply. *Id. See also Hauser v. Mealey,* 263 N.W.2d 803, 806 (Minn.1978); *American Druggists Insurance v. Thompson Lumber Co.,* 349 N.W.2d 569, 572–573 (Minn.Ct.App.1984).

In a somewhat analogous case, *Pangalos v. Halpern,* 247 Minn. 80, 76 N.W.2d 702 (1956), an administratrix brought action against attorneys to recover money paid under a settlement agreement as fees for services rendered an estate in litigation. The Supreme Court held that the probate court order, made on an agreed statement of facts with the agreement of the parties and awarding the fees to the attorneys, was not subject to collateral attack by an independent action to recover the money. The court reasoned:

Since the order herein determining the reasonable value of the attorneys' fees and directing their payment in the course of administration was in essence a final judgment binding and conclusive upon the parties, and res judicata as to the point adjudicated, it falls under the following general rule: In the absence of fraud, a valid judgment, decree, or as here an order which is the equivalent thereof, entered by agreement or consent, operates as res judicata to the same extent as if it had been rendered after contest and full hearing and is binding and conclusive upon the parties and those in privity with them.

247 Minn. at 85–86, 76 N.W.2d at 706 (footnote omitted).

It has been urged that the doctrine of collateral estoppel requires that *all* parties to the present action be identical with or in privity with the parties to the prior adjudication. This misconceives the modern rule. As explained by Professor James R. Pielemeier:

Until recently, virtually all courts held that collateral estoppel could be applied only if "mutuality" existed. Under the "mutuality" rule, only those persons who would have been subject to preclusion had the issue been resolved against them could successfully invoke collateral estoppel. Because collateral estoppel could be asserted only against those who had had their "day in court" on the issue, the mutuality requirement normally limited the application of collateral estoppel to cases in which both the party asserting and the party defending against preclusion were parties to the litigation that first determined the issue.

The leading case in the movement abolishing the mutuality requirement is *Bernhard v. Bank of America* [19 Cal.2d 807, 122 P.2d 892], decided in 1942 by the Supreme Court of California. Since *Bernhard,* many courts, including the United States Supreme Court, have abandoned the mutuality requirement. In *Parklane Hosiery Co. v. Shore* [439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)] the Supreme Court, noting that collateral estoppel furthers the dual purposes of protecting litigants from the burden of relitigating issues and promoting judicial economy, held that federal courts had broad discretion to determine when to apply collateral estoppel. The exercise of this discretion would be aided, in part, by determining whether the application of collateral estoppel would be "unfair" to the precluded party. Notwithstanding this flexible approach to the application of collateral estoppel *by* nonparties to earlier litigation, the Court repeated the general rule that it cannot be asserted *against* a person "who was not a party or a privy" in the suit in which the issue was determined. The Court noted that such an application would violate due process.

Pielemeier, *Due Process Limitations on the Application of Collateral Estoppel Against Nonparties to Prior Litigation,* 63 B.U.L.Rev. 383, 386–87 (1983) (footnotes omitted).

This has been applied as follows in Minnesota, as stated in *Shimp v. Sederstrom,* 305 Minn. 267, 233 N.W.2d 292, 294–95 (1975):

One of the requirements for the application of the doctrine of collateral estoppel, also known as estoppel by verdict, is that the issue sought to be litigated in the second action must have been litigated and determined in a prior action. *Radmacher v. Cardinal,* 264 Minn. 72, 117 N.W.2d 738 (1962). A number of our cases have applied this requirement to contribution suits. In *Radmacher v. Cardinal, supra,* an automobile passenger sued his host-driver, who brought a third-party action seeking contribution from the driver of the other automobile. In a previous adversary action, however, the third-party defendant had been found to be free from causal negligence and the third-party plaintiff had been found causally liable. We held that the prior verdict estopped the third-party plaintiff from asserting a right to contribution from the third-party defendant unless the claim was based on negligence unrelated to the negligence proximately causing the collision. No such unrelated negligence has been alleged in the case at bar.

An analogous holding was rendered by the Court of Appeals for the Eighth Circuit in *National Farmers Union Property & Cas. Co. v. Fisher,* 284 F.2d 421 (1960). There, two passengers sued two drivers, and the drivers cross-claimed against each other for their personal injuries. The jury found both drivers guilty of causal negligence. In a subsequent action, a third passenger brought an action against one of the drivers, who then sought contribution from the second driver. The court held that the prior action precluded the second driver from denying that the collision resulted from the concurrent negligence of both drivers.

(Footnotes omitted).

We conclude that this purported action is, at best, premature. The district court, in approving the minor settlement, specifically recited that it was "fair and reasonable," after a hearing to determine that question. The record discloses that the minor's attorney candidly admitted that liability was not firm and that the amount of the settlement was not close to the damages. It is this very judgment of the court, that the settlement was, under the circumstances, provident, that must be set aside before appellant can establish damages upon which a malpractice case can be predicated.

Counsel have briefed and argued the question of whether the appellant is in privity with an attorney retained by her guardi-

an ad litem to represent her interests, even though the trial court did not decide the summary judgment motion on this ground. We agree that it gives little trouble.

The relevant statute is Minn.Stat. § 540.-08, which states:

A parent may maintain an action for the injury of a minor son or daughter. A general guardian may maintain an action for an injury to the ward. A guardian of a dependent, neglected, or delinquent child, appointed by a court having jurisdiction, may maintain an action for the injury of the child. If no action is brought by the father or mother, an action for the injury may be brought by a guardian ad litem, either before or after the death of the parent. * * * No settlement or compromise of the action is valid unless it is approved by a judge of the court in which the action is pending.

The Minnesota Supreme Court has repeatedly held that the object and effect of this statute is to enable the parent to bring the action for the benefit of the child. Whatever is recovered belongs to the child. *See Gardner v. Kellogg*, 23 Minn. 463, 467 (1877); *Buechner v. Columbia Shoe Co.*, 60 Minn. 477, 62 N.W. 817 (1895); *Lathrop v. Schutte*, 61 Minn. 196, 197, 63 N.W. 493, 494 (1895).

In *Brunette v. Minneapolis, St. Paul and Sault Ste. Marie Railway Co.*, 118 Minn. 444, 137 N.W. 172 (1912), the Supreme Court reiterated its position on the question of a minor's privity. The court said:

We have held in several cases that the judgment in an action brought by the father for the benefit of his minor child * * * is a bar to any subsequent action for the same cause prosecuted by the minor, by his guardian, general or ad litem, or by himself when he reaches his majority. *The infant is a party to the action, through his father as his representative.*

118 Minn. at 446, 137 N.W. 172 (emphasis added, citations omitted). *See also Hess v. Adamant Mfg. Co. of America*, 66 Minn.

79, 68 N.W. 774 (1896); Pielemeier, *Due Process Limitations* at 390–91.

■ It is clear from the statute and case law that a minor, represented by a guardian, is a party to the action through his or her guardian. Thus, appellant is in privity with respondent.

## DECISION

The doctrine of collateral estoppel bars relitigation of the issue of the adequacy of this minor settlement. Therefore, the judgment of the district court is affirmed.

Affirmed.

LESLIE, Judge, concurring specially.

I concur in the result reached in the majority opinion. I do not, however, believe that the result can be reached by relying on the doctrine of collateral estoppel. The recognized requisites for invoking the doctrine are not in my opinion present.

Notwithstanding, I am satisfied that the legal community and others interested in the finality of court approved minor settlements have sought such settlements with the understanding that once approved they would not be disturbed absent their fraudulent procurement. The fact that this is described as a case of first impression bears witness to this truth.

Surely this reliance on court approved minor settlements has risen to a rule of law which we should now declare: Court approved settlements of minors' claims when done openly and substantially following established procedures are clothed with finality and officers of the court representing the minor may not be sued absent fraud.

Without such a rule of law there may be, as Judge Mulally stated in his memorandum, "thousands of time bombs ticking away throughout the jurisdictions of this state by way of minors' claims settled with court approval, which will ripen into malpractice actions when the minor attains his/her majority in 10–15–18 years and decides that the settlement attained is not now to his/her liking."

Without this rule of law we would expose attorneys to the task of defending against malpractice suits fraught with obvious problems for both litigants. That list includes retrieving records, procuring witnesses, finding insurance policies and establishing coverage and the usual recall difficulties about a matter long since forgotten. The burden which would surely be difficult for the plaintiff would be intolerable for the defendant.

Perhaps even more important is the potential future impact of a contrary rule. The law now properly favors settlements and the real beneficiary of the settlement (while admittedly also the attorney) is surely the minor child. Without this rule many lawsuits brought on behalf of minors would be tried, often as Judge Mulally suggests, "to the extreme detriment of the minor." And, I might add with an adverse effect on an already crowded court calendar.

The law as it has been understood and relied upon has worked well. The facts of this case do not justify proclaiming a different rule of law.

In the absence of an allegation of fraud and because recognized and established procedures were followed in obtaining the minor settlement at issue in this case I would also affirm.

POPOVICH, Chief Judge, concurring specially.

I concur in the result reached by the majority and the application of collateral estoppel. I also agree with Judge Leslie's views regarding reliance on long accepted practice relating to minor settlements absent fraud.

I would, however, consider adoption of a new cause of action desired by the minority only if prospective in nature or if enunciated by the Supreme Court or the Legislature after due consideration, public hearings, and input from possible amici. I am mindful of the process that occurred when governmental immunity was abolished in 1962, *see Spanel v. Mounds View School District No. 621*, 264 Minn. 279, 118 N.W.2d 795 (1962), and the subsequent enactment of Minn.Stat. § 466 *et seq.* in 1963 and as amended thereafter.

FOLEY, Judge (dissenting).

I respectfully dissent. Plaintiff has an independent cause of action which she ought to be permitted to pursue on the merits.

1. **The plaintiff should not be collaterally estopped from bringing her claim.**

The majority opinion holds that the doctrine of collateral estoppel estops plaintiff from asserting her claim of negligence against the respondent attorney. The majority opinion totally ignores the fact that the settlement which was approved when plaintiff was four years old related to a claim of negligence asserted against entirely different tortfeasors—on entirely different issues.

The doctrine of collateral estoppel is applicable where:

(1) the issue is identical to one in a prior adjudication; *and*

(2) there has been a final adjudication on the merits; *and*

(3) the estopped party was a party or in privity with a party to the prior adjudication; *and*

(4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982). Applying these elements to the present situation shows that the doctrine of collateral estoppel is inapplicable. At least two of these elements are missing.

(a) *Identity of issues.*

Plaintiff claims that the respondent attorney negligently failed to assert a claim in products liability against the Maytag Company and negligently failed to pursue discovery against the Maytag Company before seeking court approval of the minor settlement. This claim was never raised at the hearing on the minor settlement. Only the negligence of defendants who allegedly

caused the loss of plaintiff's arm was at issue. As one court explained, when faced with a legal malpractice action following court approval of a probate settlement:

This alleged misconduct on the part of respondent [attorney], giving rise * * * to causes of action [for malpractice] based on both contract and tort, could not possibly have been litigated in the probate court proceeding. The other obvious reason for this conclusion is that respondent [attorney] was not and could not have been a party to that proceeding.

*Garcia v. Borelli*, 129 Cal.App.3d 24, 180 Cal.Rptr. 768, 772 (1982). *Garcia* is compelling authority here.

(b) *Opportunity to be heard.*

Because the issue of the respondent's negligence was never raised at the minor settlement hearing, it is clear that the plaintiff has never been given a "full and fair opportunity to be heard on that issue." Our Supreme Court has stated:

"[F]or estoppel by judgment to foreclose relitigation of *issues* in a subsequent suit, it is essential that the *issue* sought to be foreclosed was actually litigated and determined in the initial action."

*Hentschel v. Smith*, 278 Minn. 86, 99, 153 N.W.2d 199, 208 (1967), *quoting from Seaboard Air Line R. Co. v. George F. McCourt Trucking, Inc.*, 277 F.2d 593, 596 (5th Cir.1960) (emphasis in original).

Cases upon which the majority relies are consistent with the above rule. Thus, in *Hauser v. Mealey*, 263 N.W.2d 803 (Minn. 1978), the court stated:

[T]he principle of collateral estoppel operates as to matters which were *actually litigated* and determined by, and *essential to*, a previous judgment, irrespective of whether the subsequent action is predicated upon the *same or a different* cause of action.

*Id.* at 806 (emphasis supplied).

In *Shimp v. Sederstrom*, 305 Minn. 267, 233 N.W.2d 292 (1975), also relied upon by the majority opinion, the Minnesota Supreme Court explained the policy behind the doctrine of collateral estoppel:

The policy of putting an end to litigation, in so far as it is implemented by doctrines of res judicata and collateral estoppel * * * is based on the principle that a party should not be twice vexed for the *same* cause, and that it is for the public good that there be an end to litigation.

*Id.*, at 270, 233 N.W.2d at 294 (emphasis supplied).

By no stretch of the imagination can it be soundly argued that the issue of the respondent attorney's negligence has *already* been litigated or that the respondent has *already* been required to defend upon that issue.

My position that neither collateral estoppel nor res judicata applies to bar plaintiff's claim is fully supported by the unanimous opinion of the Minnesota Supreme Court in *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899 (Minn.1984), and plaintiff's independent tort action should proceed to trial.

Although the settlement order might very well be *evidence* at the trial on the merits in this case, that order standing by itself is not determinative of the issues raised here, as there are material fact issues in dispute remaining for trial. To reiterate, respondent's negligence was never considered before, and is premised on an entirely different issue than that which led to the original claim at the time of plaintiff's injury.

**2. The plaintiff has an independent cause of action for legal malpractice.**

The present action by plaintiff against the respondent attorney cannot be considered premature, as the majority suggests. It is a separate and independent action and does not require reopening of the minor settlement before proceeding on her claim.

A legal malpractice action is a claim against an attorney for liability "unique to and aris[ing] out of the rendition of professional services." R. Mallen and V. Levit, *Legal Malpractice* § 1 at 3 (2d ed. 1981). The elements of this claim against an attorney for malpractice are found in *Christy v.*

*Saliterman,* 288 Minn. 144, 150, 179 N.W.2d 288, 293–294 (1970):

> In an action against an attorney for negligence or breach of contract, the client has the burden of proving the existence of the relationship of attorney and client; the acts constituting the alleged negligence or breach of contract; that it was the proximate cause of the damage; and that but for such negligence or breach of contract the client would have been successful in the prosecution or defense of the action. * * * Once it has been established that the relationship of attorney and client exists and that plaintiff has sustained damages by reason of the attorney's negligence or breach of contract, the right to recover is established.

A plaintiff must demonstrate that the attorney rendered legal advice "under circumstances which made it reasonably foreseeable to the attorney that if such advice was rendered negligently, the individual receiving the advice might be injured thereby." *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 693, n. 4 (Minn. 1980). As noted by one commentator,

> Under general principles of tort law, the lawyer has a duty not to act negligently when others may be injured by his negligence. When his advice is sought, the lawyer is not unlike the driver of a car who is under a duty not to create an unreasonable risk of harm to others by driving negligently. Like the driver, the lawyer's duty does not arise from a contract, but from the traditional tort principle that a duty of care is created whenever a person engages in conduct that may create an unreasonable risk of harm to others.

63 Minn.L.Rev. 751, 758 (1979) (footnotes omitted).

That a party may bring a claim for legal malpractice against his attorney after an allegedly inadequate settlement has been entered into has been recognized by the Minnesota Supreme Court in *Glenna v. Sullivan,* 310 Minn. 162, 245 N.W.2d 869 (1976). In *Glenna,* as in the present action, the plaintiffs alleged that an attorney's negligent preparation of the case had caused them to accept an inadequate settlement. The court noted that the elements of a legal malpractice action set forth in *Christy v. Saliterman* should be applied to determine whether the plaintiffs had sufficiently demonstrated a cause of action against the attorney, but then affirmed the trial court's entry of a directed verdict because the plaintiffs had not proved the attorney's negligence. The *Glenna* case clearly demonstrates that in Minnesota a cause of action exists for legal malpractice entirely *independent* of an action to vacate or set aside a settlement.

The distinction between these two types of actions was noted by a New York appellate court in *Becker v. Julien, Blitz and Schlesinger, P.C.,* 95 Misc.2d 64, 406 N.Y. S.2d 412, 413–414 (1977):

> What plaintiff claims here * * * is that the settlement [in the prior action], concededly binding upon him, was improvidently made because of the attorneys' malpractice. * * * The fact that the [prior] case has been irrevocably terminated does not, in and of itself, preclude a malpractice claim. * * * In many, if not most instances involving an alleged malpractice by attorneys, the underlying litigation has been terminated—by allowing the Statute of Limitations to lapse, by suffering a default or dismissal and the like. Often it is the very fact of termination of the action which gives rise to the claim for malpractice. Where the termination is by *settlement* rather than by a dismissal or adverse judgment, malpractice by the attorney is more difficult to establish, but a cause of action can be made out if it is shown that assent by the client to the settlement was compelled because prior misfeasance or nonfeasance by the attorneys left no other recourse. Thus, * * * the cause of action for legal malpractice must stand or fall on its own merits, with no automatic waiver of a plaintiff's right to sue for malpractice merely because plaintiff had

voluntarily agreed to enter into a stipulation of settlement.

(Emphasis supplied.)

Consistent with the above reasoning, where a law firm was sued for malpractice by a plaintiff who had entered into a settlement and release after the law firm had allegedly allowed the statute of limitations to run against a party, the Oregon Supreme Court stated:

Plaintiff's [prior] cause of action * * * was for personal injuries incurred * * *. Plaintiff's cause of action against defendants [attorneys] was for malpractice which occurred later when defendants negligently (according to plaintiff's complaint) failed to serve [a party] prior to the expiration of the statute of limitations. These are two separate and distinct acts giving rise to two separate and distinct causes of action.

*King v. Jones*, 258 Or. 468, 483 P.2d 815, 817 (1971).

Despite the fact that this action for legal malpractice is *independent* of any attack upon the settlement itself, it should nonetheless be noted that historically minor settlements, even though court-approved, have not been regarded as final and binding. Although it is true that settlement of disputes is highly favored, *Schmidt v. Smith*, 299 Minn. 103, 107, 216 N.W.2d 669, 671 (1974), and that settlements "will not be lightly set aside by the courts," *Johnson v. St. Paul Insurance Companies*, 305 N.W.2d 571, 573 (Minn.1981); nonetheless, minor settlements may be set aside upon a showing of good cause.

In *Eliseuson v. Frayseth*, 290 Minn. 282, 187 N.W.2d 685 (1971), the Minnesota Supreme Court held that a minor settlement may be vacated either by an independent action or by a motion under Rule 60.02(6), Minn.R.Civ.P., which allows relief from a final order, judgment or proceeding for "any other reason justifying relief." The *Eliseuson* court noted:

This court has repeatedly held that the trial court may, for good cause, review an order approving a minor's settlement made pursuant to Minn.St. 540.08, and that if, upon such review, it appears that such settlement was based upon a mutual mistake of fact, it may vacate and set aside its order of approval.

*Id.*, at 284, 187 N.W.2d at 686 (citations omitted).

Recently, in *Johnson v. St. Paul Insurance Companies*, 305 N.W.2d 571, 574 (Minn.1981), the court again indicated that to vacate a minor settlement a party need only demonstrate "mutual mistake of fact, misrepresentation, or other ground justifying a setting aside of the settlement."

Thus, minor settlements are not absolutely final, and may, upon occasion be vacated absent a demonstration of fraud. Equally true, to maintain a legal malpractice action has never required the demonstration of fraud.

Approval of a minor settlement should not insulate an attorney from any actionable negligence he may have committed in connection with his representation of the minor's interests.

**3. Statutes of limitation have been tolled.**

Ordinarily statutes of limitation will bar lawsuits which are commenced many years after a cause of action accrues; however, the Minnesota legislature has specifically chosen to suspend the running of statutes of limitation during minority, and to allow actions to be brought during the one-year period after the infancy has ceased:

Any of the following grounds of disability, existing at the time when a cause of action accrued or arising anytime during the period of limitation, shall suspend the running of the period of limitation until the same is removed; provided that such period, except in the case of infancy, shall not be extended for more than five years, nor in any case for more than one year after the disability ceases:

(1) That the plaintiff is within the age of 18 years * * *

Minn.Stat. § 541.15 (1982). *No exception is made in the statute for lawsuits based upon attorney malpractice or minor settlements. In Nebola v. Minnesota Iron*

*Co.,* 102 Minn. 89, 91, 112 N.W. 880 (1907), the Minnesota Supreme Court perhaps best expressed the philosophy behind the above statute which has been consistently recognized:

> In the enactment of the statutes recognition is taken of the fact that in many instances persons entitled to bring an action may be laboring under some disability, such as infancy, insanity, and other causes; and, to the end that they may have the same opportunity to right their wrongs as those not under disability, exception is made in their behalf to the effect that, where the disability exists when the cause of action accrues, the statute shall not run during the continuance of the same, within the further limits of the restrictions contained in the exception. *The exceptions thus ingrafted upon the operation of the statute are remedial, and should be liberally construed.*

(Emphasis supplied.)

The relatively recent decision of *Eliseuson v. Frayseth,* 290 Minn. 282, 187 N.W.2d 685 (1971), is in accord with the above philosophy. In *Eliseuson,* the plaintiff, upon reaching the age of majority, sought to vacate a minor settlement which had been entered into several years previously. The court determined that Minn.Stat. § 541.15, providing for the tolling of the period of limitations during minority, was applicable, and that the plaintiff had one year after reaching the age of majority in which to bring his action to vacate the minor settlement. *Id.,* at 287, 187 N.W.2d at 688. Although the *Eliseuson* decision involved an action to vacate a minor settlement, rather than a legal malpractice action involving the settlement as in this case, a logical extension of *Eliseuson,* along with a liberal construction of the tolling statutes, would require the tolling of the period of limitations during minority under Minn.Stat. § 541.15 for a legal malpractice action, to allow a minor child one year after reaching his majority in which to bring such action.

Undoubtedly the appellant's mother and legal guardian could have commenced an action for malpractice on behalf of the appellant and against the respondent within the general limitations period. However, it has generally been held that a lawsuit may be instituted by an infant upon attaining the age of majority even though a guardian has previously been appointed, and although other persons of legal age were capable of suing on the minor's behalf. *See, e.g., Pardy v. United States,* 548 F.Supp. 682 (S.D.Ill.1982); *Manley v. Detroit Automobile Inter-Insurance Exchange,* 127 Mich.App. 444, 339 N.W.2d 205 (1983); *Nelson v. Galveston, H. & S.A. Ry. Co.,* 78 Tex. 621, 14 S.W. 1021 (1890); *Anno.,* 86 A.L.R.2d 965, 970 § 5. As one court noted, "[t]hese decisions are based on the reasoning that the tolling statute focuses on the minor and not on his guardian since the minor is the true owner of the action." *Pardy,* 548 F.Supp. at 684.

### 4. Plaintiff and respondent had an attorney-client relationship.

In addition to the questions raised concerning timeliness of this action and finality of the minor settlement, the parties to this action have raised the issue whether there existed an attorney-client relationship between the minor and the attorney-respondent at the time of the settlement.

Until recently in Minnesota, in an action against an attorney for malpractice, a party has had the burden of demonstrating that an attorney-client relationship existed. *Christy v. Saliterman,* 288 Minn. 144, 150, 179 N.W.2d 288, 293 (1970). This requirement was in accordance with the view that "[t]raditionally, attorneys' malpractice exposure has been limited to their clients." Mallen and Levit, § 71 at 142. However, in *Marker v. Greenberg,* 313 N.W.2d 4, 5 (Minn.1981) the Minnesota Supreme Court noted the trend to expand the concept of privity in attorney-client relationships, and cited with approval the factors expressed in *Lucas v. Hamm,* 56 Cal.2d 583, 15 Cal. Rptr. 821, 823, 364 P.2d 685, 687 (1961), *cert. denied* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962):

"[T]he determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm."

It has been recognized that "[t]he predominant inquiry * * * has generally resolved to one criterion: were the services intended to benefit the plaintiff. Regardless of whether the legal theory is based upon express or implied contract, the deterministive question is did the attorney and his client intend the plaintiff to be *the* beneficiary of his services." Mallen and Levit, § 80 at 157 (footnotes omitted) (emphasis in original).

Here, the appellant was the intended beneficiary of the minor settlement. The lawsuit was commenced on her behalf, captioned: "Robin Cook, a minor, by Carolyne K. Cook, her parent and natural guardian * * *." Appellant's mother, who had retained the respondent to represent her daughter, took nothing from the settlement. This situation is analogous to one where an attorney was held to represent a ward, as well as his guardian. *Fickett v. Superior Court of Pima County*, 27 Ariz. App. 793, 558 P.2d 988 (App.1976). *See also Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F.Supp. 906 (D.C.1982), where the attorney for a trustee administering an employee's benefit plan was held to also represent the employee-participants in the plan.

**5. Public policy recognizes the plaintiff's right to assert this claim.**

The special concurring opinion of Judge Leslie, as well as the trial court, suggests that to allow this plaintiff to pursue her claim in negligence would open a floodgate of litigation. That concern was addressed over 30 years ago by *Miller v. Monsen*, 228 Minn. 400, 37 N.W.2d 543 (1949), a case of first impression, where children were suing for alienation of a parent's affections. The Minnesota Supreme Court in that decision stated:

There is no merit to the contention that allowance of recovery in cases of this kind would produce a *flood* of litigation of the same sort. Assuming it to be true that to allow a right of recovery would increase litigation, that fact would be no valid reason for denying the right, for the plain reason that, if such enticement constitutes a legal wrong, there should be a remedy to obtain redress.

*Id.*, at 404–405, 37 N.W.2d at 546 (emphasis in original).

The fact that the appellant's claim is one which has not been considered previously by an appellate court in Minnesota should not bar its allowance. Where there is a wrong alleged, the trend of the common law has been to expand its borders to allow the claim to be asserted. A notable example of this growth and change in the area of minors' rights is the recent determination by the Minnesota Supreme Court that the doctrine of parental immunity should be replaced by the "reasonable care" standard in child-versus-parent negligence actions. *Anderson v. Stream*, 295 N.W.2d 595 (Minn.1980). The *Anderson* court observed: "our decision * * * is supported by basic principles of public policy. A fundamental concept of our legal system and a right guaranteed by our state constitution, is that a remedy be afforded to those who have been injured due to the conduct of another." *Id.*, at 600, *citing Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975); Minn. Const. art. I, § 8.

*Miller v. Monsen* perhaps best expresses the reason why appellant's claim, although never before raised, must be allowed:

Novelty of an asserted right and lack of common-law precedent therefor are no reasons for denying its existence. The common law does not consist of absolute, fixed, and inflexible rules, but rather of broad and comprehensive principles

based on justice, reason, and common sense. It is of judicial origin and promulgation. Its principles have been determined by the social needs of the community and have changed with changes in such needs. These principles are susceptible of adaptation to new conditions, interests, relations, and usages as the progress of society may require. * * * It is but lip service to these principles to say that the common law has such capacity for growth and expansion and then to refuse to allow it effect in a particular case where that should be done.

*Miller v. Monsen,* 228 Minn. at 406, 37 N.W.2d at 547.

## CONCLUSION

By permitting plaintiff to pursue her claim as an independent cause of action we would change no existing rule of law—we would upset no precedent. *Miller v. Monsen,* at 411, 37 N.W.2d at 549. We would only recognize a right.

I would reverse and remand for trial on the merits.

SEDGWICK, Judge (dissenting).

I join in the dissent of Judge Foley.