Robin COOK, Appellant,

v.

John S. CONNOLLY, Respondent.

No. C6-83-2043.

Supreme Court of Minnesota.

April 19, 1985.

Michael J. Healey, St. Paul, for appellant.

Thomas R. Hughes, St. Paul, James P. Miley, Mark E. Duval, Minneapolis, for respondent.

SIMONETT, Justice.

This appeal raises the issue whether a prior court order approving a minor personal injury settlement bars, by collateral estoppel, a subsequent malpractice suit by the injured person against her attorney for an allegedly inadequate settlement. The Court of Appeals, sitting en banc, with two concurrences and two dissents, held that collateral estoppel was a bar. *Cook v. Connolly*, 353 N.W.2d 184 (Minn.App. 1984). We reverse.

On May 1, 1969, plaintiff-appellant Robin Cook, age 4, caught her right arm in the wringer of a washing machine, necessitating amputation of the arm near the shoulder. The child's mother, Carolyn K. Cook, retained defendant-respondent John S. Connolly, a St. Paul attorney, to bring suit. Attorney Connolly commenced an action against the owner of the apartment building where the Cooks lived, the firm providing the caretaker services for the building, and Maytag Company, the manufacturer of the washing machine. When the case was called for trial on April 3, 1973, the child then being 8 years old, the trial court was advised the parties had arrived at a settlement of Robin's claims for $15,000, subject to the court's approval. Following a hearing, the court entered an order approving the proposed disposition, finding this was "a fair and reasonable settlement."

Ten years later, on September 20, 1983, Robin, then 18 years old, commenced this malpractice action against attorney Connolly, alleging that Connolly had negligently failed to plead strict liability against Maytag Company (although negligent, unsafe design had been pleaded) and claiming, further, that Connolly had failed to use proper care in pursuing the products liability claim against Maytag, all with the result that she had received an inadequate settlement. Promptly, without waiting for any pretrial discovery, defendant Connolly moved for summary judgment on the ground of "no privity" between Robin and him at the time of the alleged negligence and on the ground that the prior court-approved settlement was, in the absence of any allegation of fraud, "binding against plaintiff." The trial court granted defendant's motion on the second ground, and on appeal the Court of Appeals affirmed. We granted further review.

I.

We agree, first of all, with the Court of Appeals that Robin Cook is "in privity" with attorney Connolly. Defendant Connolly's argument seems to be that he was retained by Carolyn Cook, the mother, and that Robin was not privy to this retainer, so the first requisite of a malpractice action—proof of an attorney-client relationship—is lacking. There is no merit to this argument. Since Connolly is also here urging collateral estoppel, he concedes, as he must, that the personal injury action was Robin's cause of action. *Brunette v. Minneapolis, St. Paul and Sault Ste. Marie Ry. Co.*, 118 Minn. 444, 446, 137 N.W. 172, 173 (1912). ("It is the infant's case. [She] is the real party plaintiff.") The mother, as authorized by statute, retained Connolly to represent her child.[1]

---

1. Minn.Stat. § 540.08 (1984) provides in part: "A parent may maintain an action for the injury of a minor son or daughter * * *. No settlement or compromise of the action is valid un-

less it is approved by a judge of the court in which the action is pending."

Proper practice is to designate the plaintiff as "Robin Cook, a minor, by Carolyn K. Cook, her

Because procedurally the child acts through its parent in retaining legal counsel and in maintaining the cause of action should not obscure the reality that the child is the attorney's client. To suggest that Robin's mother alone is the client, and·not Robin, is to ignore the mother's representative capacity and the child's direct interest. Maintenance of Robin's cause of action was for Robin's benefit and the attorney was paid for his services from Robin's recovery. We hold that an attorney-client relationship existed between the minor child and attorney Connolly in the handling of the minor's personal injury action.

## II.

We now reach the main issue, namely, does collateral estoppel apply? The trial court in 1973, in ordering approval of settlement of the minor's claim for $15,000, found that the settlement was fair and reasonable. In the current malpractice suit, Robin challenges this finding, claiming her minor settlement was not fair and reasonable. Is this a collateral attack? We think not.

■ For collateral estoppel to apply, among other requirements, the issue raised in the pending litigation must be the same issue that was adjudicated in the prior pro-

ceeding, and the party estopped must have had a full and fair opportunity to litigate the issue in the prior proceeding.[2] We conclude neither of these requirements has been met here.

■ In her malpractice action, Robin Cook is claiming that defendant Connolly was negligent in his conduct of the investigation and presentation of the claim against Maytag, and that as a result of this negligence Robin settled for less than her case was worth if it had been properly presented. This is not the same issue that was before the trial court on the proposed settlement approval. The trial court in 1973 was evaluating the adequacy of the proposed settlement, not the adequacy of the minor's legal representation. While there is a correlation between these two matters, the trial court assumes the proposed settlement is the product of adequate legal representation. Ordinarily, the trial court is not in a position to question this assumption because it has before it only the information furnished by counsel in support of the settlement.[3] Even if the trial court should reject a proposed settlement, this need not suggest attorney incompetence, but only difference of opinion. A proposed settlement represents the best judgment of counsel on what is attainable for his or her client based on a wide variety

---

parent and natural guardian." This is how attorney Connolly sued the case. The mother, of course, could also have sued in her own right for loss of services and expenses, and, in that case, "Carolyn K. Cook, individually," would have been added as a party plaintiff. In this instance, it appears Robin's expenses were paid from a collateral source and the mother did not herself sue.

2. Collateral estoppel is usually appropriate where "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982), *quoting Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71, 74 (D.Minn. 1979). *See also Kaiser v. Northern States Power Co.,* 353 N.W.2d 899, 902 (Minn.1984).

3. For example, the trial court may be aware of a lack of evidence which weakens a plaintiff's

claim but not be aware of the reasons for that lack of evidence, or, if aware of the reasons, not aware of their validity.

One of the most difficult settlement proposals to evaluate is where the damages are heavily discounted because of dubious liability. *Compare Kopet v. Bearl,* 289 Minn. 495, 182 N.W.2d 833 (1970). In this case, it was recognized by all concerned that damages had been discounted. Attorney Connolly for that reason waived his expenses, and the release signed by the minor's mother recites that the $15,000 payment is a "greatly reduced figure." We might add that Rule 3 of the Code of Rules for the District Courts provides in part that the order of approval shall "[s]tate the reason or reasons why the proposed disposition is approved if the Court is approving a settlement for an amount which it feels is less than what the injuries and expenses, [sic] might seem to call for, *e.g.,* limited insurance coverage, dubious liability, comparative negligence or other similar considerations."

of considerations, each of which some other attorney might weigh differently; and counsel's good faith judgment, even if in error, is not deemed to be malpractice. *Glenna v. Sullivan,* 310 Minn. 162, 169, 245 N.W.2d 869, 872–73 (1976). In short, at a hearing on approval of a proposed minor settlement, the trial court is not adjudicating issues of legal malpractice.

 Neither is the hearing on a proposed minor settlement designed to afford a full and fair opportunity to consider the issue of lawyer competence. The minor's guardian, a layperson, is ill-equipped to raise the issue, much less present it; counsel for both the minor and the defendant are interested in obtaining approval, not disapproval, of the proposed settlement, and the minor's attorney, surely, is unlikely to use the occasion to confess any professional inadequacy.

 We agree, therefore, with Judge Foley's dissent. We do not have here the conditions for issue preclusion. The issue of whether the court-approved settlement was fair and reasonable in the light of an allegation that the claimant's attorney had negligently presented that claim, was not adjudicated at the hearing on approval of the proposed minor settlement. We hold collateral estoppel does not apply.

### III.

 The majority opinion of the Court of Appeals suggests that Robin Cook's malpractice action is premature. The court states that the approval of the $15,000 settlement "must be set aside before appellant can establish damages upon which a malpractice case can be predicated." *Cook,*

353 N.W.2d at 187. But, as the dissent points out, the malpractice action is a separate, independent action from the action against Maytag. Indeed, if the minor settlement, hypothetically, were set aside and a further recovery then obtained from Maytag, the malpractice action against Connolly would be frustrated for inability any longer to show damages. Or if the minor settlement were set aside and the case against Maytag competently tried to a jury, resulting in a defense verdict, again, plaintiff's separate malpractice action would fail for want of damages. It is not enough for a malpractice plaintiff to prove attorney negligence if the consequence of that negligence has been set aside and remedied in a separate proceeding.[4]

 Moreover, we have recognized that a client may sue her attorney for malpractice in obtaining an inadequate personal injury settlement without first having the settlement set aside. We implicitly so held in *Glenna. Compare Becker v. Julien, Blitz & Schlesinger, P.C.,* 95 Misc.2d 64, 406 N.Y.S.2d 412 (1977). We hold, therefore, that plaintiff's malpractice action is an independent cause of action, not subsumed in the plaintiff's personal injury action, and, consequently, that setting aside the court-approved settlement is not a prerequisite to maintenance of plaintiff's malpractice action.

 It follows from this holding that plaintiff's malpractice action is not limited to instances where the results in the minor's personal injury action were the result of fraud on the part of the minor's attorney. The presence of a prior court-ap-

---

**4.** It may be that a plaintiff's attorney will not only commence a malpractice action but will also attempt to set aside the court-approved settlement, either by a motion brought under Minn.R.Civ.P. 60.02, or in an independent action in equity. *Johnson v. St. Paul Ins. Co.,* 305 N.W.2d 571, 573 (Minn.1981), *citing Eliseuson v. Frayseth,* 290 Minn. 282, 187 N.W.2d 685 (1971). Plaintiff's attorney may bring both actions on the theory that if one does not succeed, perhaps the other will. Indeed, Robin Cook has a second suit. She has pending a separate action against Maytag (in which Maytag has impleaded Carolyn Cook) to set aside the court-approved settlement.

The grounds for setting aside a settlement, however, are entirely different from the issues involved in a malpractice action. *See, for example, Rogalla v. Rubbelke,* 261 Minn. 381, 112 N.W.2d 581 (1961). Moreover, a plaintiff seeking to set aside a settlement is confronted with the strong public policy that settlements are highly favored and "will not be lightly set aside by the courts." *Johnson,* 305 N.W.2d at 573 (involving a minor settlement).

proved minor settlement does not make this malpractice suit different from any other malpractice action on the standard of conduct required of the defendant attorney, although it may be relevant evidence on whether the standard of conduct was met.

## IV.

Both the trial judge and the Court of Appeals majority were concerned with the consequences of allowing court-approved minor settlements to be vulnerable to legal malpractice suits. We share that concern. The concern is not with the meritorious claim which is entitled to its day in court, but with the temptation afforded claimants to challenge proper court-approved settlements many years later, after memories have faded and counsel files have been discarded, with all the advantages of hindsight, the second-guess, and the inflated dollar. It is this latter kind of lawsuit that the trial court referred to as "time bombs ticking."

It is important, however, to remember the procedural posture of this case. Although defendant Connolly labeled his motion as one for summary judgment, it was really little different from one for judgment on the pleadings.[5] In effect, defendant's motion claimed that plaintiff's complaint, not having alleged fraud, failed to state a cause of action. This was the only matter ruled on by the trial court. Defendant-respondent argues, however, that because plaintiff had failed to file any affidavits showing lawyer incompetence, the order granting "summary judgment" disposes of this case on its factual merits as well. Plaintiff, on the other hand, says she had understood defendant's motion to question only the sufficiency of the pleadings. We agree with plaintiff. The motion was limited to the legal issues of privity, collateral

estoppel, and a fraud requirement, and disposition of the motion decides nothing more. In other words, any motion for summary judgment on the factual merits remains to be made.

 In this connection, it needs to be remembered that a purpose of the summary judgment procedure is to separate the wheat from the chaff and relieve the court system of the burden and expense of unfounded litigation. *See, e.g., Sauter v. Sauter*, 244 Minn. 482, 485, 70 N.W.2d 351, 353 (1955) (provides a "just, speedy, and inexpensive determination"); D. McFarland & W. Keppel, *3 Minnesota Civil Practice* § 1651 at 231 (1979); *see generally* Pielemeier, *Summary Judgment in Minnesota: A Search for Patterns*, 7 Wm. Mitchell L.Rev. 147 (1981). On a motion for summary judgment, the court determines whether a genuine issue of material fact exists under the rules of law governing the cause of action. Minn.R.Civ.P. 56.03. In making this determination in malpractice cases, we believe the well-established rule protecting a professional against honest errors in judgment needs to be carefully considered. Thus in *Glenna*, we held as a matter of law that the defendant attorney's acceptance of an allegedly inadequate settlement offer was, even if error, within the bounds of an honest exercise of professional judgment, and we affirmed a trial court's directed verdict for the defendant at the close of plaintiff's case. In *Prawer v. Essling*, 282 N.W.2d 493 (1979), on a claim for legal malpractice in trial preparation and presentation, we affirmed a summary judgment for defendant. In *Meagher v. Kavli*, 256 Minn. 54, 57, 97 N.W.2d 370, 371 (1959), we cautioned against the "omniscience of hindsight in appraising a lawyer's conduct," and in *Glenna* we stated that dissatisfaction with a settlement solely

5. Minn.R.Civ.P. 12.03 provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on such motion, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment * * *."

Defendant Connolly's answer pleaded the court-approved minor settlement as a defense. Connolly's motion for "summary judgment" is silent on any matters outside the pleadings. The parties, in their briefs for and against the motion, apparently supplied documents on the court-approved settlement but these added little to what was already in the pleadings.

because a jury might have awarded more is no basis for a malpractice claim. *Glenna*, 310 Minn. at 170, 245 N.W.2d at 873.

We believe summary judgment will, as it has in the past, protect to a large extent against the misguided "ticking time bomb," while at the same time allowing the meritorious case to proceed.

Reversed and remanded.

SCOTT, J., took no part in the consideration or decision of this case.