**DALTON MOTORS, INC., Plaintiff,**

v.

**A. Vernon WEAVER, as Administrator of the Small Business Administration, Defendant.**

**No. Civ. 4–77–355.**

United States District Court,
D. Minnesota,
Fourth Division.

March 16, 1978.

Joseph T. O'Neill, O'Neill, Burke & O'Neill, Ltd., St. Paul, Minn., for plaintiff.

Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

Plaintiff was an authorized Chrysler-Plymouth dealer in Mankato, Minnesota. In 1972 it was forced to move from its downtown location by a federally funded urban renewal project. Seeking to rebuild in the outskirts of Mankato, plaintiff sought financial assistance from the Small Business Administration (SBA). On October 6, 1972, the SBA made a direct loan to plaintiff in the amount of $508,000, secured by a mortgage on real property owned by plaintiff. The same day the SBA in participation with Northwestern National Bank of Mankato, loaned an additional $104,000 to plaintiff. This loan was secured by a real estate mortgage which was subsequently assigned to the SBA. A third mortgage encumbering plaintiff's real estate provided

security for a direct loan made by the SBA on September 28, 1973, in the amount of $63,000. A promissory note evidencing plaintiff's liability accompanied each mortgage.

Plaintiff was unable to meet its payment schedules for the mortgages and defaults occurred. In June 1977, the SBA initiated foreclosure of the mortgages by advertisement pursuant to Minn.St. ch. 580. A foreclosure sale was held on August 5, 1977, and the SBA was the only bidder. Its bid of $440,169.53 left a deficiency on plaintiff's debt of $318,952.93 principal and $571.25 interest (as of November 8, 1977). Pursuant to Minn.St. 580.23,[1] plaintiff's redemption period expired six months from the date of the foreclosure sale.

Chrysler-Plymouth terminated plaintiff's dealership effective February 27, 1977. Plaintiff asserted claims against Chrysler-Plymouth for rental value payments under the franchise agreement and for wrongful termination. Soon after the foreclosure sale, the SBA notified Chrysler-Plymouth that it was entitled under the mortgage to any rental value payments. Although continuing to negotiate a settlement with plaintiff, Chrysler-Plymouth has indicated that it will make no payments until the identity of the proper payee is resolved.

Plaintiff commenced this action on October 12, 1977, for declaratory and injunctive relief, contending that its liability to the SBA was satisfied by the foreclosure sale. The Court derives jurisdiction over the controversy from 15 U.S.C. § 634(b)(1). See also 28 U.S.C. § 2201.

Both parties have moved for summary judgment. The Court heard oral argument on the motions on December 21, 1977. Based on that argument, the memoranda, exhibits and affidavits submitted by the parties, and the files and records in this cause, the Court finds summary judgment proper and renders judgment for the plaintiff.

The issue presented arises from the federated character of our government. A federal agency, the SBA, has foreclosed plaintiff's mortgage, availing itself of the procedural and substantive advantages of foreclosure by advertisement under Minnesota law. Plaintiff contends that the SBA should accept as well the protections Minnesota law affords debtors whose mortgages are foreclosed by advertisement. Chief among these is waiver by the purchaser at the foreclosure sale of the right to a deficiency judgment. Minn.St. 580.23 (quoted in note 1 supra). The SBA argues that as a federal agency it is not bound by state law that circumscribes its remedies to recoup the proceeds of a federal loan. In support of its claim that it is entitled to a deficiency judgment,[2] the SBA cites a federal statute, its own regulations, and the language of the mortgages themselves.

■■■ In the absence of congressional legislation or authorized administrative regulations, the propriety of a court creating and applying federal common law involves a difficult balance of federal and state interests. See, *United States v. Yazell,* 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966); *United States v. MacKenzie,* 510 F.2d 39 (9th Cir. 1975) (en banc). If a

1. Minn.St. 580.23, subd. 1 provides:
   When lands have been sold in conformity with the preceding sections of this chapter the mortgagor, his personal representatives or assigns, within six months after such sale . ., may redeem such lands, as hereinafter provided, by paying the sum of money for which the same were sold, with interest from the time of sale . . ., together with any further sums which may be payable pursuant to section 582.-03. Where the redemption period is as provided in this subdivision the mortgagee, or his successors, assigns, or personal representative, or any other purchaser so purchasing at the sheriff's sale shall by purchasing the property

at the sheriff's sale thereby waive his right to a deficiency judgment against the mortgagor.

2. The SBA claims as well that it is entitled under the mortgages to the rents and profits due plaintiff under the franchise agreement with Chrysler-Plymouth. The Court finds this claim moot in light of its holding that the SBA is not entitled to a deficiency judgment. The mortgagee's purchase at the foreclosure sale extinguished plaintiff's indebtedness under the mortgage and therefore the SBA has no ground of entitlement to any rents or profits owing to plaintiff.

federal statute or administrative regulation exists, however, and conflicts with state law, the supremacy clause forces the latter to yield. *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961). Similarly, valid federal common law overrides contrary state law.

The SBA cites 15 U.S.C. § 634(b)(4) as sufficient federal authority to permit the defendant to collect a deficiency judgment, state law notwithstanding. That section provides in part:

> In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may . . . pursue to final collection, by way of compromise or otherwise, all claims against third parties assigned to the Administrator in connection with loans made by him. This shall include authority to obtain deficiency judgments or otherwise in the case of mortgages assigned to the Administrator.
> . . .

Only one of the mortgages in question was assigned to the SBA, the other two resulted from direct loans. In any event, the statute merely empowers the Administrator to obtain deficiency judgments, it does not delineate the circumstances in which such judgments may be obtained.

The regulations promulgated by the SBA pursuant to 15 U.S.C. § 634(b)(6) attempt greater precision. Section 101.1(d) provides in part:

> (2) Instruments evidencing a loan, obligation or security interest in real or personal property, payable to or held by the Administration or the Administrator, such as promissory notes, bonds, guaranty agreements, mortgages, deeds of trust, and other evidences of debt or security shall be construed and enforced in accordance with applicable Federal law.
>
> (3) In order to implement and facilitate these Federal loan programs, the application of local procedures, especially for recordation and notification purposes, may be utilized to the fullest extent feasible and practicable. However, the use of local procedures shall not be deemed or

construed to be any waiver by SBA of any Federal immunity from any local control, penalty, or liability.

> (4) Any person, corporation, or organization that applies for and receives any benefit or assistance from SBA, or that offers any assurance or security upon which SBA relies for the granting of such benefit or assistance, shall not be entitled to claim or assert any local immunity to defeat the obligation such party incurred in obtaining or assuring such Federal benefit or assistance.

13 C.F.R. § 101.1(d). A relevant principle is advanced in each subsection: first, the mortgages in question shall be construed and enforced according to federal law; second, the use of local procedures by the SBA shall not be deemed a waiver of its federal immunity; and third, a debtor shall not be entitled to assert any local immunity to defeat the obligation. Only the first of these principles is reflected in the language of the mortgages.

Each of the three mortgages contains the following paragraphs:

> Said promissory note was given to secure a loan in which the Small Business Administration, an agency of the United States of America, has participated. In compliance with section 101.1(d) of the Rules and Regulations of the Small Business Administration (13 C.F.R. 101.1(d)), this instrument is to be construed and enforced in accordance with applicable Federal law. [p. 2]
>
> In the event said property is sold at a judicial foreclosure sale or pursuant to the power of sale hereinabove granted, and the proceeds are not sufficient to pay the total indebtedness secured by this instrument and evidenced by said promissory note, the mortgagee will be entitled to a deficiency judgment for the amount of the *deficiency without regard to appraisement.* [¶ 5]

The power of sale referred to in paragraph 5 of the mortgage is one of three remedies that paragraph 3 of the agreement provided in the event of default and acceleration of the debt. The other two remedies provided

by paragraph 3 were sale of the property without appraisement at a judicial sale pursuant to the provisions of 28 U.S.C. § 2001(a) and "tak[ing] any other appropriate action pursuant to state or Federal statute either in state or Federal court or otherwise for the disposition of the property."

■ Analysis of plaintiff's obligation to the SBA must begin with an examination of the language of the mortgages themselves. *United States v. Gish,* 559 F.2d 572, 574 (9th Cir. 1977); *United States v. Outriggers, Inc.,* 549 F.2d 337 (5th Cir. 1977). Quite apart from considerations of federalism, a federal agency and an individual with whom it contracts may agree that state or federal law is to govern their relationship. E.g., *United States v. Stewart,* 523 F.2d 1070 (9th Cir. 1975).

■ Defendant argues from the paragraphs of the mortgages quoted above that plaintiff has acknowledged that federal law governs and that it is required to pay any deficiency judgment. The Court agrees that federal law applies but finds that plaintiff did not contract to pay a deficiency judgment in the circumstances of this case. *United States v. Gish,* 559 F.2d 572 (9th Cir. 1977), relied on by defendant, involved a similar factual situation. There, a three-judge panel of the Ninth Circuit found that two typewritten provisions in a deed of trust were the most important reason for departing from an earlier en banc decision of that circuit, *United States v. MacKenzie,* 510 F.2d 39 (9th Cir. 1975) (holding that in the absence of statutory, administrative, or contractual provision to the contrary, state-law protections for debtors apply in foreclosure proceedings on SBA loans). Paragraph 6 of the deed of trust in

*Gish* provided that the "[t]rustor shall be liable for and agrees to pay any deficiency." Paragraph 12 acknowledged: "The undersigned further agrees that, pursuant to Part 101 of the Rules and Regulations of the Small Business Administration, this instrument is to be construed and enforced in accordance with the applicable Federal law. The undersigned hereby waives any local immunity from the performance of any obligation hereunder." It is evident that the deed of trust in *Gish* speaks with greater clarity and emphasis than the mortgages in question here.

Although federal law governs, the content of applicable federal law remains to be determined. See, *United States v. Chappell Livestock Auction, Inc.,* 523 F.2d 840 (8th Cir. 1975) (en banc). State law occasionally is adopted as the federal rule of decision. E.g., *United States v. Marshall,* 431 F.Supp. 888 (N.D.Ill.1977). The Court does not construe the language of the mortgages or the SBA regulations to apply to the situation where the SBA avails itself of a summary state foreclosure procedure. The SBA would be entitled to a deficiency judgment in other circumstances: for example, in foreclosure proceedings under 28 U.S.C. § 2001(a). Federal common law, as well as the SBA regulations and the mortgages, would require as much. See, *United States v. Thompson,* 438 F.2d 254 (8th Cir. 1971); *United States v. Wells,* 403 F.2d 596 (5th Cir. 1968).[3] But if the SBA chooses to seek the procedural benefits of a summary foreclosure procedure offered by a state, it should be ready to accept as well the protections the state affords its mortgagors under that procedure.

---

**3.** Even under federal common law defenses to a deficiency judgment exist:

The defenses which may be asserted to a claim for deficiency judgment where the United States is the creditor have not been delineated by statute. They are the traditional defenses. One which has been fashioned in case law is that a sale under a foreclosure may be set aside for the inadequacy of the sales price if the inadequacy was so gross as to shock the conscience. . . . There may be defenses in law such as release or

disputing service or the balance due, or in equity such as laches or estoppel.

*United States v. Wells,* 403 F.2d 596, 598 (5th Cir. 1968). At oral argument counsel for plaintiff argued that the foreclosure sale price was only one-third to one-half of the fair market value of the mortgaged property. Defendant argued that the sale price equalled the fair market value. Although a genuine issue of fact may thus be presented, it is not a material issue in the Court's analysis.

The Court finds *Gish* the most cogent opposing case, and there the deed of trust clearly informed the debtor of the state-law protections he was waiving. The mortgages here state that federal law applies but do not indicate that in the event the SBA forecloses the mortgage under a summary state procedure the mortgagor has waived the protections of state law. The mortgages state that the SBA is entitled to a deficiency judgment if the proceeds of the sale are insufficient, but do not indicate that this is to remain the case even if a summary state foreclosure procedure is used and state law provides to the contrary. It cannot fairly be said that plaintiff was apprised of its purported waiver of state-law protections. The Supreme Court has noted in a similar context:

> If it had been intended that the result now sought by the Government would obtain, simple fairness as well as elementary craftsmanship would have dictated that in a Texas agreement the wife be advised, at least by formal notation, that she was, in the opinion of the SBA, binding her separate property, despite Texas law to the contrary.

*United States v. Yazell,* 382 U.S. 341, 347, 86 S.Ct. 500, 504, 15 L.Ed.2d 404 (1966).

Defendant suggests that SBA regulations should be read into the mortgage. The Court finds no reason to give the SBA more than it bargained for, since application of state law is the more desirable rule of federal law.

The protection offered by Minnesota law to a mortgagor subjected to foreclosure by advertisement advances legitimate state interests. The aim of Minn.St. 580.23 is elimination of the injustice that occurs when the foreclosure sale price is significantly less than the fair market value of the mortgaged property. The false deficiency that would ordinarily result and become an obligation of the mortgagor is discharged when the mortgagee purchases the property at the foreclosure sale. But the procedure offers advantages to the mortgagee as well, for it permits foreclosure without resort to litigation. Compare, e.g., Minn.St. ch. 581

(foreclosure by action). The balance struck by the Minnesota Legislature between the interests of the mortgagor and mortgagee need not shift merely because the mortgagee is a federal agency. Federal interests are not endangered.

Recognition of the debtor protections before us does not pose any significant threat to the legitimate interests of the Government in having its loan repaid. Devices to assure that fair market prices are received at foreclosure sales redound to its benefit. Depriving the Government of potential "double recoveries" created by artificially large deficiencies that it has caused takes away nothing to which it is entitled.

In fact, the application of the debtor protections before us encourages Congress' announced aims in enacting the SBA legislation. Congress wanted to assist small business and, perforce, small businessmen "insofar as is possible." To deprive those very businessmen of protection from economic overreaching will adversely affect their ability to survive a foreclosure and to start afresh and will potentially deter those whom Congress wanted to help as much as possible from seeking SBA loans.

*United States v. MacKenzie,* 510 F.2d 39, 42 (9th Cir. 1975) (en banc). Nor does application of Minnesota safeguards necessarily subject the SBA to the hazards of foreclosing loans in a multitude of jurisdictions and stumbling on differing state protections. Here, the SBA could have preserved its right to a deficiency judgment by pursuing other remedies. Instead, it chose from its arsenal an expeditious and inexpensive foreclosure procedure. No federal interest, statute, or regulation requires this Court to free the SBA from the rigors of the path it chose. The SBA could itself have negotiated a waiver of those rigors. *United States v. Gish,* 559 F.2d 572 (9th Cir. 1977). Only in that circumstance is the "waiver" cached in 13 C.F.R. § 101.1(d)(4) meaningful and applicable to a local *summary* foreclosure.

The Court does not construe *any* use of local procedure in connection with a foreclo-

sure to be a waiver of sovereignty by the SBA. Certainly, some use of the procedures of the jurisdiction in which the mortgaged property is located is necessary to any foreclosure. It would be senseless to duplicate local notification and recording schemes, for example, and the Court would find no waiver in the use of such incidents. 13 C.F.R. § 101.1(d)(3). But it is another matter entirely for a federal agency to employ a summary foreclosure procedure offered by a state on the condition that certain safeguards to protect the mortgagor's interest be observed and then point to its federal character as a shield against application of those safeguards.

A danger of summary foreclosure procedures is illustrated by the facts in this case. The notice of foreclosure sale contained a different description of the mortgaged property than did the mortgage. The SBA had learned that the description in the mortgage covered property the mortgagor did not own, and corrected the error in the notice of foreclosure sale.[4] But as of the time of oral argument the SBA had not bothered to remove the shadow the mortgage erroneously cast on the property not owned by plaintiff. Counsel for defendant assured the Court that this oversight would be rectified, but the error hints at the dangers inherent in summary foreclosure procedures.

For the reasons advanced above, IT IS ADJUDGED that defendant has waived his rights to collection of a deficiency judgment and that therefore plaintiff's indebtedness to defendant on the notes and mortgages in question is discharged.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

**4.** Minnesota Statutes require in a foreclosure by advertisement that the notice of foreclosure sale specify, inter alia, "[a] description of the mortgaged premises, conforming substantially to that contained in the mortgage." Minn.St. 580.04(4). The Court does not reach the question whether the description in the notice substantially conformed to the description in the mortgage.