634 F.2d 1099
 VICTORY HIGHWAY VILLAGE, INC., a Minnesota corporation, and
James T. Dalton and Joanne A. Dalton, husband and
wife, Appellants,
v.
A. Vernon WEAVER as Administrator of the Small Business
Administration, Appellee.
 No. 80-1134.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 8, 1980.
Decided Nov. 14, 1980.
 
 Thomas K. Berg, U. S. Atty., Minneapolis, Minn., John M. Lee, argued, Asst. U. S. Atty., D. Minn., Minneapolis, Minn., for appellee.
 Joseph T. O'Neill, argued, St. Paul, Minn., and Lawrence A. Wilford, O'Neill, Burke & O'Neill Ltd., St. Paul, Minn., for appellants.
 Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and HEANEY, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 This action was filed in the District Court as a declaratory judgment proceeding by the guarantors against the holder and owner of a promissory note, secured by a real estate mortgage and certain personal guaranties, to determine the liability of the guarantors where the original debtor had been discharged of any deficiency, after foreclosure, by operation of a Minnesota statute.
 
 
 2
 Victory Highway Village, Inc., a corporation owned by James and Joanne Dalton and of which James Dalton is president, and the Daltons individually appeal the District Court's[1] grant of summary judgment in favor of A. Vernon Weaver, Administrator of the Small Business Administration (SBA). The court found the appellants were not discharged from unconditional guaranties given by them with regard to SBA loans to Dalton Motors, Inc., a now defunct Chrysler dealership. The Daltons argue that the prior discharge of the principal debtor, Dalton Motors, under a Minnesota foreclosure statute should also result in the discharge of the guarantors. We affirm the decision of the District Court.
 
 
 3
 In October 1972 and September 1973, the SBA made a total of three loans to Dalton Motors, Inc. in the total principal amount of $675,000 for the construction of an automobile dealership in Mankato, Minnesota. The loans were secured by mortgages on the real estate owned by Dalton Motors, Inc. In addition, the SBA secured guaranties from Victory Highway Village, Inc., a mobile home park located next to the dealership, and from the Daltons personally.
 
 
 4
 When Dalton Motors, Inc. could not make the necessary payments, the loans went into default. In June 1977, the SBA initiated a mortgage foreclosure proceeding on the real estate. At the sheriff's sale, the SBA purchased the property for $440,169.53. More than a year later the SBA sold the property at auction for $465,000. The deficiency balance, as of February 13, 1979, totalled $342,999.74.
 
 
 5
 Although the SBA could have foreclosed under a federal statute, 28 U.S.C. § 2001(a) (1976), which entails a court proceeding, the SBA followed the foreclosure proceedings outlined in Minn.Stat. §§ 580.01-.30, which allow foreclosure through advertisement. Section 580.23 grants a six-month redemption period to the mortgagor. It also contains a provision which creates a statutory waiver by the mortgagee of any deficiency due from the mortgagor if the mortgagee purchases the property at the sheriff's sale.[2] Minn.Stat. § 580.23 (West Supp.1980) provides in pertinent part:
 
 
 6
 Subdivision 1. When lands have been sold in conformity with the preceding sections of this chapter the mortgagor, * * * within six months after such sale, * * * may redeem such lands * * * by paying the sum of money for which the same were sold, with interest from the time of sale at the rate provided to be paid on the mortgage debt * * *. Where the redemption period is as provided in this subdivision the mortgagee, or his successors, assigns, or personal representative, or any other purchaser so purchasing at the sheriff's sale shall by purchasing the property at the sheriff's sale thereby waive his right to a deficiency judgment against the mortgagor. (Emphasis added.)
 
 
 7
 In October 1977, Dalton Motors, Inc. sought to enforce the statutory waiver provision of section 580.23 by initiating a declaratory judgment action against the SBA. The District Court ruled in favor of Dalton Motors, finding that while federal law governs the action, state law should be adopted as the underlying substantive law. The court held that the SBA waived its right to collection of a deficiency judgment and therefore Dalton Motors' indebtedness had been discharged. Dalton Motors, Inc. v. Weaver, 446 F.Supp. 711 (D.Minn.1978). The SBA did not appeal the District Court's decision.
 
 
 8
 The two guarantors of Dalton Motors, Inc. then requested that the SBA release them from any obligation that may exist under the guaranty agreements. The SBA refused, and the guarantors initiated a declaratory judgment action claiming that the Dalton Motors, Inc. decision discharged them from any liability. The guarantors' motion for summary judgment was denied on October 12, 1979. Victory Highway Village, Inc. v. Weaver, 480 F.Supp. 71 (D.Minn.1979). The SBA then moved for summary judgment, which was granted by the District Court on January 18, 1980.
 
 I.
 
 9
 The District Court found, by applying the doctrine of collateral estoppel, that it was bound by the finding of the Dalton Motors, Inc. case, supra, 446 F.Supp. at 714, that while federal law governs, state law should be adopted as the rule of decision. Victory Highway Village, Inc., supra, 480 F.Supp. at 74. We note that the issue in the Dalton Motors, Inc. case was whether state law should be applied with regard to construing the SBA loan agreement with the principal, Dalton Motors. In this case, the issue is whether state law should be applied with regard to construing the SBA guaranty agreements with the guarantors, Victory Highway Village and the Daltons.
 
 
 10
 The underlying issue dealt with in the Dalton Motors case involved the effect state foreclosure statutes had on dealings between the mortgagor and mortgagee. A considerable body of state statutory law exists on this subject. In contrast, in this case we are dealing with the effect of a single state statute which discharges the mortgagor but makes no direct reference to the guarantor. There is no similar body of state statutory law governing the relationship between the mortgagee and guarantor. The issues are therefore not identical in these two cases. See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 323, 91 S.Ct. 1434, 1439-1440, 28 L.Ed.2d 788 (1971), quoting Bernhard v. Bank of America National Trust and Savings Association, 19 Cal.2d 807, 813, 122 P.2d 892, 895 (1942). Furthermore, the important federal interest in enforcing contracts entered into with the United States may override some of the efficiency advantages of non-mutual collateral estoppel. See Standefer v. United States, 447 U.S. 10, 21-23, 100 S.Ct. 1999, 2006-2007, 64 L.Ed.2d 689, 700-701 (1980). For these reasons we find the issue of the proper law to be applied to this case is not precluded by the doctrine of collateral estoppel.
 
 
 11
 Generally, federal law governs questions involving the rights of the United States arising under nationwide federal programs. United States v. Kimbell Foods, Inc., 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). However, because of the District Court's interpretation of the breadth of the Minnesota statute, with which we agree, and because of the unconditional nature of the guaranty, we find it unnecessary to resolve the question of whether state law or a federal common law should be incorporated into the governing federal law. See United States v. Kimbell Foods, Inc., supra, 440 U.S. at 726-727, 99 S.Ct. at 1457-1458 (1979); United States v. Dismuke, 616 F.2d 755, 758 (5th Cir. 1980); United States v. Conrad Publishing Co., 589 F.2d 949, 953 (8th Cir. 1978); United States v. Beardslee, 562 F.2d 1016, 1022 (6th Cir. 1977), cert. denied, 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978); cf. United States v. Yazell, 382 U.S. 341, 356-357, 86 S.Ct. 500, 508-509, 15 L.Ed.2d 404 (1966). While adoption of state law as the rule of decision in the Dalton Motors, Inc. case involving the relationship between the mortgagor and mortgagee in foreclosure procedures may, perhaps, be supported on the ground that the SBA voluntarily chose to utilize the state statutory procedure, see id., 446 F.Supp. at 716, it is not at all clear that state law should be applied to the relationship between the mortgagee and the guarantor. In Minnesota, there is no uniform body of either common or statutory law governing this relationship. The federal courts and the SBA would be required to attempt to predict the Minnesota state court's development of the law in this area. The situation, however, might be different if a clear body of state law existed. See United States v. Kimbell Foods, Inc., supra, 440 U.S. at 732 & n.28, 99 S.Ct. at 1460 & n.28; United States v. Dismuke, supra, 616 F.2d at 757 & n.4; Dalton Motors, Inc., 446 F.Supp. at 715. Since we find no conflict between Minnesota law and federal law we need not resolve this difficult issue. See United States v. Bass, 618 F.2d 500, 502 n.2 (8th Cir. 1980).
 
 II.
 
 12
 The appellants argue that the discharge of the principal, Dalton Motors, Inc., also must discharge the guarantors of the loans. The appellants do not argue that the literal language of the foreclosure statute, Minn.Stat. § 580.23 (West Supp.1980), discharges the guarantors. The relevant sentence states only that where the mortgagee purchases the property at the sheriff's sale, he "thereby waive(s) his right to a deficiency judgment against the mortgagor." (Emphasis added.) The guarantor is not mentioned. Furthermore, the appellants admit they "have been unable to find any Minnesota case dealing with the specific issue of the effect of a foreclosure by advertisement with a six month redemption period upon the liability of (the) guarantor of the mortgagor," appellants' brief at 9; nor have we found any Minnesota case on that issue.
 
 
 13
 The appellants do argue that a discharge of the guarantor would support the policy rationale of the statute, which, according to appellants, is an attempt to eliminate "the injustice that occurs when the foreclosure sale price is significantly less than the fair market value of the mortgaged property." Id. at 10; see Dalton Motors, Inc., supra, 446 F.Supp. at 715. The issue of fair value is not presented in this case, and it appears on this record that fair value was bid for the property. Furthermore, a guarantor's position is not analogous to that of the mortgagor; it is analogous to that of the mortgaged property itself. A guaranty is often sought by a mortgagee when the underlying collateral (in this case real estate) is of insufficient value to cover the amount loaned if the mortgagor defaults. Generally, the purpose of a guaranty is to provide payment when for any reason the principal debtor fails to discharge his obligations. The common definition of a guaranty unambiguously covers this situation: "guaranty-1. a pledge by which a person commits himself to the payment of another's debt or the fulfillment of another's obligation in the event of default." Webster's New World Dictionary, College Edition 643 (1964). If it had been clear to the SBA that the collateral value of the real estate exceeded the amount of the loan, there would have been no need to seek the personal guaranties. The guaranties are additional collateral for the loan. The SBA had two separate and independent types of collateral: (1) the real estate, and (2) the personal guaranties. The Minnesota statute applies to only the first type of collateral, not the second.
 
 
 14
 The SBA guaranty contracts support the interpretation that the guaranties were independent of the mortgaged property. The contracts provided that the SBA had the power "to effect any release, compromise, or settlement with respect * * * " to the lender's liability. The guaranties were unconditional in nature. See United States v. Anderson, 366 F.2d 569, 571 (10th Cir. 1966); Duke v. Reconstruction Finance Corp., 209 F.2d 204, 206 (4th Cir.), cert. denied, 347 U.S. 966, 74 S.Ct. 777, 98 L.Ed. 1108 (1954); Dahmnes v. Industrial Credit Co., 261 Minn. 26, 110 N.W.2d 484, 488-89 (1961). The SBA therefore was not even required to foreclose against the real estate prior to enforcing the guaranty contract. It would be anomalous to rule that the SBA, having gone to the trouble and expense of foreclosing the real estate security in an action which reduced the guarantors' potential liability, is then precluded from enforcing the guaranty contracts. We decline to do so. See United States v. Beardslee, 562 F.2d 1016, 1023-24 (6th Cir. 1977). The contractual provisions were specific and straightforward. The SBA should not have its contractual rights subject to a strained interpretation of a tangential state statute.
 
 
 15
 In addition, to the extent that Minnesota is attempting to protect the mortgagor from receiving an unfair price for mortgaged property when the mortgagee purchases at the sheriff's sale, the circumstances involved herein suggest that this rationale is not applicable to the procedures utilized by the United States in this case. The SBA was created by Congress to aid small businesses. The SBA, as opposed to a commercial financial institution, is a non-profit government agency. By granting low interest loans, as in this case, the SBA has forgone any profitmaking role. In fact, the loans are often an indirect subsidy to the small business. With regard to the Dalton Motors, Inc. loan, the SBA, after purchasing the foreclosed property, held it for more than a year and was only then able to sell it at auction for slightly more than five percent above what the agency had paid for it-a small return on an investment by commercial standards. The debtor was fairly and reasonably treated by the SBA in this case. There is no reason in law or equity to extend the Minnesota statute to the guarantors under these circumstances.
 
 
 16
 Finally, it is possible that the guarantors, in addition to the mortgagor, may have had a right to redemption under Minnesota law. Minnesota Statute § 580.24 allows redemption to be made by legal or equitable creditors after the expiration of the redemption period for the mortgagor. The guarantor generally has an implied right to indemnity or reimbursement for sums paid under the guaranty. See United States v. Nichols, 105 F.Supp. 543, 556 (N.D.Iowa 1952), appeal dismissed, 202 F.2d 956 (8th Cir. 1953); 38 C.J.S. Guaranty § 111 (1943). As potential equitable creditors, Victory Highway Village and the Daltons may have been able to redeem the foreclosed property from the SBA under the statute. This statutory provision would have enabled them to protect themselves against the possibility that the SBA purchased the property at an unfairly low price. No such attempt was made by any of the guarantors.
 
 
 17
 We conclude that under the provisions of the guaranty contract, even construed in light of Minnesota law, the guarantors were not discharged by the statutory waiver against a deficiency judgment from the principal, as determined by the District Court in Dalton Motors v. Weaver, 446 F.Supp. 711 (D.Minn.1978).
 
 
 18
 For the reasons stated herein, the judgment is affirmed.
 
 
 
 [1]
 The Honorable Donald D. Alsop, United States District Judge, District of Minnesota
 
 
 [2]
 While statutory redemption in Minnesota dates back to 1878, the latter provision was only recently added, in 1967, when the redemption period was shortened from one year to six months. 1967 Minn.Laws, Ch. 248, § 2