The STATE BANK OF YOUNG AMERICA, Appellant,

v.

Kenneth F. FABEL, et al., Respondents,

Brayton Chemical, Inc., et al., Defendants.

No. C6-94-2149.

Court of Appeals of Minnesota.

May 2, 1995.

Review Denied June 29, 1995.

Charles H. Wise, Nicklaus & Wise, Chaska, for appellant.

Richard M. Carlson, Minneapolis, for respondents.

Considered and decided by NORTON, P.J., SCHUMACHER and MANSUR,* JJ.

## OPINION

NORTON, Judge.

After foreclosing on a mortgage, purchasing the property subject to the mortgage at a foreclosure sale, and thereafter selling the property in a public auction for less than the amount paid at the foreclosure sale, State Bank of Young America (State Bank) brought an action against the Fabels, personal guarantors of the mortgage debt, for the difference between the price paid at the foreclosure sale and the price paid at the subsequent resale. The trial court dismissed the claim, concluding that State Bank's purchase of the property at the sheriff's sale had extinguished the mortgage debt and, thus, had discharged the obligation of the guarantors. Finding the Bank's claim to be frivolous, unfounded and in bad faith, the trial court assessed attorney fees and costs against State Bank. We affirm.

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## FACTS

On March 6, 1984, Ken's Farm Service (Ken's), the principal debtor in this action, borrowed $200,000 from State Bank of Young America (State Bank) pursuant to the rules and regulations of the Small Business Administration (SBA). The note was signed by Kenneth Fabel, as president of Ken's, and Arlene Fabel, as secretary/treasurer of Ken's. Ken's mortgaged certain real property and offered certain personal property as security for the loan. The Fabels executed personal guaranties for the principal amount of $200,000, and agreed to repay that sum according to the terms of the guaranty. Under the terms of the guaranty, the Fabels agreed to the performance of the terms of a second mortgage. The second mortgage covered the Fabels' residence.

When Ken's eventually defaulted on the loan, State Bank commenced an action for the possession and sale of the personal property of the principal debtor on June 6, 1991. On April 7, 1992, this personal property, equipment owned by Ken's, was sold at public auction. After deductions for sale expenses and attorney fees, the amount paid to State Bank as the secured party was $40,-758.17.

State Bank then commenced foreclosure proceedings on the real property and ultimately purchased the property at the sheriff's sale for $60,000, slightly more than the balance owing on the mortgage. Later, State Bank sold the property at a sealed bid auction and realized only $32,000. State Bank then sued for $40,132.68 which it claimed was the deficiency remaining after application of the proceeds from the above mentioned sales to the mortgage debt.

The Fabels moved for dismissal of the action under Minn.R.Civ.P. 12.02 and for costs and attorney fees under Minn.R.Civ.P. 11 and Minn.Stat. § 549.21, subd. 2 (1992). The Fabels claimed that the proceeds from the sale of Ken's personal property, combined with the proceeds from the sheriff's sale, extinguished the mortgage debt.

pointment pursuant to Minn. Const. art. VI, § 10.

## ISSUES

1. Does the guarantor of a mortgage debt remain liable for the debt when the mortgagee purchases the mortgaged property at a foreclosure sale for the full amount of the outstanding debt?

2. Did the trial court abuse its discretion in assessing attorney fees and costs against State Bank?

3. Are the Fabels entitled to an award of their attorney fees and costs for the appeal?

## ANALYSIS

### Standard of Review

In reviewing the dismissal of a complaint for failure to state a claim upon which relief may be granted, this court must determine:

whether the complaint sets forth a *legally sufficient* claim for relief. It is immaterial to our consideration here whether or not the plaintiff can prove the facts alleged.

*Elzie v. Commissioner of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980) (quoting *Royal Realty Co. v. Levin,* 244 Minn. 288, 290, 69 N.W.2d 667, 670 (1955) (emphasis in original)). Under Minn.R.Civ.P. 12.02,

a pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded.

*Elzie,* 298 N.W.2d at 32 (quoting *Northern States Power Co. v. Franklin,* 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963)).

## I. Liability of the Guarantors.

■ State Bank claims it can pursue the Fabels for a deficiency in this case. The bank emphasizes that it was the bidding party at the foreclosure sale and argues that the guaranty signed by the Fabels is independent of the mortgage so as to create additional liabilities on the part of the Fabels which were not extinguished when State Bank purchased the property.

State Bank's position is contrary to law.

[I]t is undoubtedly the law that a sale of the mortgaged property pays and extinguishes the mortgage debt to the amount of the purchase money, whether the prem-

ises are sold to a third party or bid in by the mortgagee.

*American Bldg. & Loan Ass'n v. Waleen,* 52 Minn. 23, 27, 53 N.W. 867, 869 (1892); *see also Olmsted County Bank & Trust Co. v. Pesch,* 218 Minn. 424, 427, 16 N.W.2d 470, 471 (1944) (sale for full amount due on mortgage operates as payment in full of debt due).

■ Minnesota law clearly sets forth the procedure to dispense funds from a foreclosure sale.

The proceeds of the sale shall be applied first in payment of the costs of the foreclosure sale, and of the installment due, with interest thereon, taxes and insurance premiums paid, if any, and then towards the payment of the residue of the sum secured by such mortgage.

Minn.Stat. § 580.09 (1992). The mortgagee may be the purchaser at the foreclosure sale. Minn.Stat. § 580.11 (1992). The mortgagee "may bid in property for the full amount of the mortgage debt." *In Re Reinboldt,* 39 B.R. 677, 678 (Bankr.D.Minn.1983) (citing Minn.Stat. § 580.11), *aff'd.,* 39 B.R. 678 (D.Minn.1984). The mortgagee may obtain a deficiency judgment against the mortgagor if the amount received from the foreclosure sale is less than:

1) the amount remaining unpaid on the mortgage under chapter 580; or

2) the amount of the judgment entered under chapter 581.

Minn.Stat. § 582.30, subd. 1 (1992). A guarantor of a bill or note is one who promises that the note shall be paid. *Black's Law Dictionary* 705 (6th ed. 1990).

The district court responded to State Bank's claim as follows:

The plaintiff's reasoning would allow them to collect twice on the note; first, through the sale of the property at foreclosure; second, through the guarantor, without regard to the proceeds from the foreclosure sale but instead allowing on the subsequent gain or loss of the property for resale. Nowhere has the plaintiff shown in case law or by statute any support for such an argument. Plaintiff, as Lender, stands

in the same shoes of any other party who might bid at the Sheriff's Sale and must suffer the loss on the resale of the property as a poor business decision.

We agree with the trial court. The note was satisfied by applying the proceeds from the sale of the personal property and from the foreclosure sale. The Fabels guaranteed the note; they did not guarantee that State Bank would not experience a loss in its subsequent sale of the property. Nor did they guarantee that State Bank would make sound business decisions.

More recent cases support this result. *See, e.g., Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.,* 28 N.Y.2d 332, 321 N.Y.S.2d 862, 863, 270 N.E.2d 694, 695 (1971) (mortgagee is entitled to one satisfaction of this debt; bidding in the full amount of the debt to purchase the mortgage property at foreclosure sale constitutes satisfaction of the debt); *First Fed. Sav. & Loan Ass'n v. Scherle,* 356 N.W.2d 894, 896 (N.D.1984) (once debt secured by mortgage is paid, mortgage is satisfied; upon payment of underlying debt, guarantee is extinguished).

In support of its position, State Bank raises case law involving deficiency judgments and bankruptcy proceedings. These cases are distinguishable and of questionable relevance to the matter at hand. *Cf. United States v. Tharp,* 973 F.2d 619, 621 (8th Cir. 1992) (SBA sought to recover deficiency judgment from note guarantors who had signed separate personal guarantee agreements similar to what the Fabels signed; after debtors' bankruptcy, court held that unconditional guaranty agreement was unaffected by any action the lender had taken against principal debtor); *United States v. Beardslee,* 562 F.2d 1016, 1023 (6th Cir.1977) (factually similar to present case except that *Beardslee* involved an actual deficiency and a company that filed bankruptcy; release of principal debtor under bankruptcy plan does not discharge obligation of guarantors for the debt), *cert. denied,* 439 U.S. 833, 99 S.Ct. 113,

58 L.Ed.2d 128 (1978); *National City Bank v. Lundgren,* 435 N.W.2d 588, 592 (Minn. App.1989) (bank's foreclosure by advertisement did not discharge guarantor from obligations where there was an actual deficiency after applying proceeds from foreclosure sale to outstanding mortgage debt), *pet. for rev. denied* (Minn. Mar. 29, 1989).

*Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71 (D.Minn.1979), *aff'd,* 634 F.2d 1099 (8th Cir.1980), warrants discussion here because of its similarity to this case. A married couple, who owned a corporation, obtained an SBA loan and signed unconditional guaranties. When the corporation could not make the payments, the loans went into default. *Id.* at 73. The SBA purchased the mortgaged property at the foreclosure proceeding and then sold the property at auction. Unlike this case, however, the foreclosure proceeding resulted in a deficiency balance.[1] The guarantors sought to be released from any obligation existing under the guarantee agreements.

The question in *Victory Highway* became whether the guarantors were liable for a deficiency even though the principal debtor had been discharged by Minn.Stat. § 580.23, a statute that waives the right to a deficiency judgment against the mortgagor if the mortgagee purchases the property at the sheriff's sale. *Victory Highway,* 480 F.Supp. at 74–75. The *Victory Highway* court emphasized that the language contained in the guaranty agreement "indicates that the guaranty is absolute and unconditional." *Id.* at 76. The court held that discharge of the mortgagor under section 580.23 did not discharge the guarantors because the statute made no direct reference to guarantors, there was no reason in law or equity to extend the statute to guarantors under the circumstances, and the guaranty contracts were unconditional in nature and independent of the mortgage property. *Victory Highway,* 480 F.Supp. at 76.

---

1. It is clear that the court calculates the deficiency based on the sale price at the real estate foreclosure and not the subsequent sale:

 As of June 9, 1977, Dalton Motors, Inc. was indebted to the SBA in the total amount of $753,009. A deficiency balance remains after the real estate foreclosure as of February 13, 1979, in the sum of $342,999.74.

 *Victory Highway,* 480 F.Supp. at 73.

 The facts of these various cases indicate that, whereas an obligation of a guarantor is not relieved by the discharge of the mortgagor in bankruptcy or the discharge of the mortgagor under the Minnesota foreclosure statute, there must be a deficiency for which the guarantors can be held liable. In cases where a principal debtor is discharged, guarantors of the debt are nonetheless liable for any deficiency; however, in a case in which the underlying debt is fully recovered, there remains nothing for which the guarantors can be held liable. In this case no deficiency exists for which the Fabels can be held liable. In essence, State Bank is attempting to satisfy a mortgage debt that already has been satisfied.

 State Bank claims that language in the guaranty to the effect that "the obligations of the [guarantors] shall not be released, discharged, or in any way affected by reason of any action lender may take or omit to take under the foregoing powers" compels this court to reverse the trial court's decision. We disagree. One of the lender's "foregoing powers" is to purchase all or any part of the collateral for its own account. The guarantors' "obligation" is to pay the principal and interest on the note until no principal or interest remains to be paid. After State Bank purchased the property at the foreclosure sale, there remained owing no principal or interest. See First Fed. Sav. & Loan Ass'n, 356 N.W.2d at 896 ("one cannot guarantee payment on a nonexistent debt").[2] Thus, there being no deficiency here, the trial court properly ruled that the Fabels were not liable to State Bank.

## II. Assessment of Attorney Fees, Costs & Disbursements.

 In the proceeding below, the Fabels, after notifying State Bank of their intent to do so, filed a motion seeking an award of attorney fees and expenses pursuant to Minn.R.Civ.P. 11 and Minn.Stat. § 549.21,

subd. 2 (1992). The district court awarded the Fabels their attorney fees, concluding that State Bank failed to state a meritorious claim upon which relief could be granted and asserted instead a claim that was frivolous, unfounded, and in bad faith.

 Minn.Stat. § 549.21 and Minn. R.Civ.P. 11 provide relief to parties who are victims of bad pleading and abuse of process. We apply an abuse of discretion standard when reviewing a district court's decision to impose either statutory or rule 11 sanctions. Uselman v. Uselman, 464 N.W.2d 130, 140, 145 (Minn.1990). Rule 11 should be construed "somewhat narrowly" as it is preferable that some sanctionable conduct escape discipline rather than causing the deterrence of legitimate or arguably legitimate claims. Id. at 142.

The trial court explained its decision regarding attorney fees as follows:

> Plaintiff in its pleadings and argument has conspicuously ignored the conditions of its own contracts with the Defendants. The Plaintiff has argued dubiously from case law of suspect relevance to this case. The Plaintiff made a poor business decision and has suffered the Defendants with false liability.

 Requisite to an award of statutory sanctions is that counsel proceeded in bad faith. "As the existence of bad faith is an issue of fact, * * * the trial court is in the best position to make this determination." Uselman, 464 N.W.2d at 140 (citation omitted). We hold that the trial court did not abuse it discretion in awarding the Fabels' attorney fees, since the evidence in this case is sufficient to show that State Bank has asserted a frivolous claim that has been costly to the Fabels. Cf. Summit House Co. v. Gershman, 502 N.W.2d 422, 425 (Minn.App. 1993) (when party sought order that vendor's judgment had been satisfied by sheriff's sale and asserted interpretation of law "contrary to existing law," award of fees based upon

---

2. State Bank claims that federal law must govern the outcome of this case. This argument is unavailing. In the absence of evidence that application of state law adversely affects federal interests, it is unnecessary to resort to federal common law. United States v. Conrad Publishing Co., 589 F.2d 949, 958 (8th Cir.1978). The Vic-

tory Highway court, when entertaining the same issue presented here by State Bank, held that "[s]ince we find no conflict between Minnesota law and federal law, we need not resolve this difficult issue." Victory Highway, 634 F.2d at 1102.

finding that motion was frivolous, without merit and intended to harass was not an abuse of discretion).

### III. Attorney Fees on Appeal.

■ The Fabels request an award of attorney fees on appeal. They cite two grounds for this request, Minn.Stat. § 549.21 and Minn.R.Civ.App.P. 138.

We award the Fabels' attorney fees on appeal under the damages for delay provision of Minn.R.Civ.App.P. 138. Attorney fees awarded by the trial court were not paid, and the Fabels were forced to bring a motion for contempt. It was also not until the trial court ordered the Bank to appeal within five days that the Bank did so. State Bank did not raise a sufficient question to justify its appeal. Instead, it asserted the same irrelevant cases here as it raised before the trial court. An award of $840 in attorney fees to the Fabels is appropriate.

### DECISION

No deficiency exists and the guarantors are not liable because State Bank purchased the property at the foreclosure sale for the full amount of the debt. The trial court's award of attorney fees is affirmed. The Fabels are awarded $840 in attorney fees for the purposes of bringing this appeal.

**Affirmed.**