#27189-a-JMK

**2015 S.D. 29**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

FIRST DAKOTA NATIONAL BANK,   Plaintiff and Appellant,

 v.

DAVID GRAHAM, JUSTIN GRAHAM,
DONALD GRAHAM and DENNIS GLATT,  Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SUSAN M. SABERS
Judge

* * * *

STEVEN K. HUFF
SHEILA S. WOODWARD of
Johnson, Miner, Marlow
 Woodward & Huff, Prof. LLC
Yankton, South Dakota     Attorneys for plaintiff
            and appellant.


THOMAS J. NICHOLSON of
Nicholson, Tschetter, Adams & Nicholson
Sioux Falls, South Dakota    Attorneys for defendant and
            appellee David Graham.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 23, 2015

OPINION FILED **05/13/15**

JASON KW KRAUSE of
Dorothy & Krause Law Firm, PC
Sioux Falls, South Dakota

Attorneys for defendant and appellee Justin Graham.


CLAIR R. GERRY of
Gerry & Kulm Ask, Prof., LLC
Sioux Falls, South Dakota

Attorneys for defendant and appellee Donald Graham.


JAMES E. MCMAHON
LISA PROSTROLLO of
Murphy, Goldammer & Prendergast, LLP
Sioux Falls, South Dakota

Attorneys for defendant and appellee Dennis Glatt.

#27189

KERN, Justice

[¶1.]     In this contract action, the lender seeks to enforce separate commercial guaranties against the individual guarantors.  The guaranties were executed to secure the indebtedness of the borrower.  The guarantors moved for summary judgment, claiming that the guaranties were unenforceable because no indebtedness existed after the lender bought the mortgaged property at a foreclosure sale for the full amount and extinguished the borrower's obligation.  The circuit court agreed and granted the guarantors summary judgment.  We affirm.

## BACKGROUND

[¶2.]     Huron Hospitality II, LLC owned and operated the Crossroads Hotel & Event Center (the Hotel) in Huron, South Dakota.  In 2008, Huron Hospitality obtained a loan from First Dakota National Bank for $2,960,000 in exchange for a promissory note and mortgage on the Hotel.  To further secure the obligation, First Dakota obtained separate commercial guaranties from the Huron Hospitality shareholders: Donald Graham, Justin Graham, Dennis Glatt, and David Graham (the Guarantors).  Guarantor David Graham managed and operated the Hotel.

[¶3.]     In July 2012, Huron Hospitality failed to make timely payments on the note.  First Dakota gave Huron Hospitality and the Guarantors notice of the default.  Neither Huron Hospitality nor the Guarantors cured the default.  However, on July 3, 2012, Guarantor Glatt and his wife wrote to First Dakota expressing concern over David Graham's management of the Hotel.  Specifically, they stated that "David cannot manage this property/investment any longer and [we] are looking for help in the resolution of this."  The Glatts listed specific

-1-

problems with Graham's management, actions, and decisions. They requested that an independent management company be hired to take over the Hotel.

[¶4.] In August 2012, First Dakota filed an amended complaint for foreclosure and receivership against Huron Hospitality under SDCL chapter 21-49. In its complaint, First Dakota alleged that Huron Hospitality had defaulted on its note and that the parties' mortgage specifically permitted the appointment of a receiver during a foreclosure proceeding. In its prayers for relief, First Dakota sought a judgment declaring that the amount due on the note was $2,817,998.69, with interest accruing from August 8 until the date of entry of a judgment in favor of First Dakota at a rate of $774.52 per day. First Dakota also requested that the court assess late charges, attorneys' fees, and sales tax thereon. First Dakota further requested that the mortgaged property "be decreed to be sold by the Sheriff of Beadle County, South Dakota," and "[t]hat the proceeds of the sale be brought into court and be applied in payment of the amount due First Dakota as found by the court's judgment, including all costs and disbursements of this action and of all sale, pre- and post-judgment interest, and reasonable attorneys' fees, sales tax and expenses." First Dakota requested that it "may become the purchaser at the sheriff's sale the same as any other bidder," and that it "may bid at the sale the full judgment debt." It asserted that Huron Hospitality stipulated to the appointment of Kelly Inn, Ltd. as "the receiver for the duration of the litigation[.]"

[¶5.] Huron Hospitality did not answer First Dakota's amended complaint, and First Dakota moved the circuit court for entry of a default judgment and for permission to foreclose on the property. On October 15, 2012, after a telephonic

hearing at which Huron Hospitality did not appear, the circuit court entered a default judgment against Huron Hospitality and granted First Dakota a "default judgment for foreclosure against HH LCC [(Huron Hospitality)]." The court's order provided that First Dakota was entitled to a default judgment against Huron Hospitality in the amount of $2,914,764.02, plus pre- and post-judgment interest and authorized expenses. The court ordered that the mortgaged premises be sold at public auction under the direction of the Sheriff of Beadle County. First Dakota was authorized by the court to bid "this judgment amount, $2,914.764.02, plus any post-judgment interest, attorney fees until date of sale, and all Receiver incurred expenses and any other indebtedness incurred by [First Dakota] on [Huron Hospitality's] behalf during the receivership."

[¶6.]     On December 18, 2012, Beadle County Sheriff Doug Solem issued a return of foreclosure sale to the circuit court. The return indicated that a sale was held on December 18 and that the sheriff sold the mortgaged property "to the highest bidder at public auction[.]" First Dakota was the highest (and only) bidder. The return provided that "the selling price was $3,076,706.83, with no offsets or other expenses. There was no surplus or deficiency." The circuit court confirmed the sale and ordered that the property remain under the control and management of the receiver "until the property is redeemed as provided by law or the expiration of the redemption period, whichever should occur first[.]" The court further ordered that the sheriff "shall make and deliver a deed to the purchaser of the property at the expiration of the period of redemption[.]"

[¶7.] After obtaining the property and after the expiration of the redemption period, First Dakota listed the Hotel for sale with a commercial real estate agency. First Dakota continued to utilize Kelly Inn to manage the hotel. The Hotel did not sell, and First Dakota informed the Guarantors in writing that it would enforce the guaranties unless one or more of the Guarantors arranged for an assignment of the Hotel or paid the debts incurred by First Dakota. None of the Guarantors responded to First Dakota's demands.

[¶8.] In November 2013, First Dakota filed a complaint against the Guarantors to enforce each "Commercial Guaranty" and alleged that each Guarantor owed First Dakota $3,241,883.03, plus costs, disbursements, attorneys' fees, sales tax on said fees, and other expenses associated with First Dakota having to run the Hotel. The Guarantors, each represented by separate counsel, answered and denied that any obligation existed under the guaranty contracts. Guarantor Glatt moved for summary judgment, which motion Guarantors David, Justin, and Donald Graham later joined. First Dakota filed a cross-motion for summary judgment.

[¶9.] A hearing was held on July 28, 2014. Guarantors argued that because no debt remained between Huron Hospitality and First Dakota after the foreclosure sale, there existed no obligation for Guarantors to guarantee. Counsel claimed that First Dakota could have enforced the guaranties after First Dakota obtained its default judgment against Huron Hospitality. First Dakota, however, chose to proceed through foreclosure and bid on the property in full satisfaction of the debt.

Guarantors argued that First Dakota could not enforce the guaranties, because there was no deficiency from the sale and the debt was completely extinguished.

[¶10.]     In response, First Dakota submitted that South Dakota's foreclosure laws have no bearing on the Guarantors' obligations under the guaranties. According to First Dakota, its decision to make a "credit bid" at the auction, which bid extinguished Huron Hospitality's debt, is immaterial. Rather, the language of the "Commercial Guaranty" controls and provides that the Guarantors agreed to pay the debt, whether barred or unenforceable, for any reason. First Dakota further argued that any decision concluding that the indebtedness was extinguished by the foreclosure sale would give the Guarantors a windfall by not holding them responsible for what they agreed to pay. Finally, First Dakota explained at the summary judgment hearing that it did not intend to keep the hotel *and* recover the full obligation from Guarantors, stating, "We would be glad to turn over the keys to this hotel to the guarantors when they pay us their guarantee."

[¶11.]     At the conclusion of the hearing, the court issued an oral ruling. The court recognized that the Guarantors were not part of or expressly protected by the foreclosure sale. However, the court found significant First Dakota's choice to bid at the auction and to bid the entire amount of Huron Hospitality's obligation. First Dakota was not obligated to make that decision, but in doing so, left no surplus or deficiency on Huron Hospitality's obligation to First Dakota. Relying on the language of the guaranty contracts, the court ruled that without indebtedness for the Guarantors to guarantee, the guaranties were unenforceable. The court granted the Guarantors summary judgment and denied First Dakota's motion.

[¶12.] First Dakota appeals with the following issue: "By entering a credit bid at the foreclosure sale of the hotel property serving as partial collateral for its loan to Huron Hospitality, LLC, did First Dakota National Bank release Huron Hospitality's Guarantors from their separate contractual obligations?"

## STANDARD OF REVIEW

[¶13.] We review a circuit court's decision to grant summary judgment "to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745 (quoting *Cooper v. James*, 2001 S.D. 59, ¶ 6, 627 N.W.2d 784, 787).

## ANALYSIS

[¶14.] First Dakota submits that "the foreclosure proceedings adjudicated only the claims between First Dakota as the lender and Huron Hospitality as the borrower." Thus, according to First Dakota, the circuit court erred when it ruled that First Dakota's credit bid at the foreclosure sale extinguished *the Guarantors'* obligations under the commercial guaranties. First Dakota directs this Court to the waiver language in the guaranties that authorized First Dakota to elect to foreclose on the property in any fashion that it deemed appropriate. It then claims that its election to foreclose on the property was not to affect the Guarantors' obligations. First Dakota further cites cases from other courts for the proposition "that the extinguishment or satisfaction of the borrower's debt does not extinguish contractual obligations under a guaranty."

[¶15.] The Guarantors, however, claim they are not seeking protection through the foreclosure action. Rather, they contend that their obligations under the guaranties depend entirely on whether there is any indebtedness of Huron Hospitality to First Dakota. Based on the guaranty language and undisputed facts, the Guarantors aver no indebtedness exists, because First Dakota (1) chose to foreclose on the property, (2) specifically sought to recover "the total balance due," plus attorneys' fees, interest, and expenses, (3) bid the full amount at the foreclosure sale, and (4) specifically directed that the proceeds of the foreclosure sale be applied to the amount due to First Dakota by Huron Hospitality.

[¶16.] "A guaranty is a promise to answer for the debt, default, or miscarriage of another." SDCL 56-1-1; *W. Petroleum Co. v. First Bank Aberdeen*, 367 N.W.2d 773, 776 (S.D. 1985). It is collateral to the principal obligation. *Robbins & Stearns Lumber Co. v. Thatcher*, 453 N.W.2d 613, 615 (S.D. 1990). "The liability of a guarantor will not be enlarged beyond the plain and certain import of the guaranty contract and any ambiguous or uncertain terms in a guaranty will be interpreted most strictly against the party who prepared it." *Id.*

[¶17.] From our review of the language of the guaranty contracts, the Guarantors' obligation is unambiguously connected to the existence of the indebtedness of Huron Hospitality to First Dakota. In particular, the guaranties provide that each Guarantor "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender." However, First Dakota contends that the Indebtedness under the guaranties means something different than money owed by Huron Hospitality to First Dakota. In

First Dakota's view, the Indebtedness under the guaranties is the full amount the Guarantors agreed to pay if Huron Hospitality failed to pay. First Dakota submits, therefore, that it is completely immaterial to this case that First Dakota extinguished Huron Hospitality's debt through foreclosure of the Hotel—the Indebtedness under the guaranties remains.

[¶18.]     "INDEBTEDNESS" is defined in the Commercial Guaranty to include amounts that are owed or will be owed by Huron Hospitality to First Dakota. Here, there is no amount owed or owing. However, Indebtedness further includes "other obligations and liability of" Huron Hospitality "and any present or future judgments against" Huron Hospitality "originated by Lender or another or others; *barred or unenforceable against Borrower for any reason whatsoever*; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated." (Emphasis added.) First Dakota relies on this language for the proposition that the Guarantors' obligation continues despite the fact that Huron Hospitality's debt was extinguished in the foreclosure sale. This conclusion might be true under different facts. Here, however, First Dakota directs this Court to no evidence that Indebtedness, as it is defined in the guaranties, exists. Besides there being no amounts owed or owing from Huron Hospitality to First Dakota, there is also no "obligation or liability against Borrower" that is "barred or unenforceable against Borrower for any reasons whatsoever." *See* Guaranty, INDEBTEDNESS. On the contrary, the sheriff's return from the foreclosure sale provided that, as a

result of a sale to the highest bidder, no surplus or deficiency resulted. Further, First Dakota has not sold the Hotel.

[¶19.] Nonetheless, First Dakota contends that the Guarantors specifically waived the right to claim that First Dakota's election to enter a credit bid at the sheriff's sale would have any effect on the *Guarantors'* obligation under the guaranties. First Dakota quotes the waiver language that "Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any 'one action' or '*anti-deficiency*' *law* or any other law which may prevent Lender from bringing any action, *including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action*, either judicially or by exercise of a power of sale[.]" *See* Guaranty, GUARANTOR'S WAIVER, Second (A) (emphasis added). First Dakota directs this Court to cases from other jurisdictions and submits that, based on the waiver language, it could "handle the foreclosure as it deemed advisable" and not extinguish the Guarantors' contractual obligation under the guaranties. We disagree.

[¶20.] First Dakota reads this waiver language too broadly and without regard to the facts of this case. The Guarantors are not attempting to assert a right or defense to First Dakota's claim under a "one action" rule. A "one action" rule provides that "a creditor must seek to recover on the property through judicial foreclosure before recovering from the debtor personally." *McDonald v. D.P. Alexander & Las Vegas Boulevard, LLC*, 123 P.3d 748, 750 (Nev. 2005); *contra* SDCL 21-47-5. The purpose of this rule is to prevent creditors from "attempting

double recovery by seeking a full money judgment against the debtor" while also "seeking to recover the real property securing the debt." *McDonald*, 123 P.3d at 751. Similarly, the Guarantors do not rely on a defense under an "anti-deficiency law"—no deficiency existed after the foreclosure sale. *See, e.g.*, SDCL 21-47-15 to - 17; *Miners & Merchants Bank v. Braden Forestry Servs., Inc.*, 374 N.W.2d 123, 125 (S.D. 1985). Moreover, the Guarantors are not asserting a right or defense under "any other law which may prevent Lender from bringing any action, including a claim for a deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action." *See* Guaranty, CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE. Rather, the Guarantors assert that First Dakota cannot enforce the guaranties under these facts because there exists no Indebtedness as it is defined under the guaranties and Huron Hospitality has no remaining obligation to First Dakota.

[¶21.] Moreover, the cases relied on by First Dakota are distinguishable. In *Du Quoin State Bank v. Daulby*, the bank brought a foreclosure action against the borrower and ultimately purchased the mortgaged property for the full amount of the borrower's debt. 450 N.E.2d 347, 348 (Ill. App. Ct. 1983). The bank re-sold the property and incurred a deficiency. Relying on the provision of the guaranty that the guarantor's liability "would not be affected or impaired by 'any sale . . . or other disposition of any said indebtedness . . . or of any security or collateral thereof,'" the bank demanded the guarantor pay the deficiency. *Id.* The Illinois court upheld the bank's enforcement of the guaranty based on the specific guaranty contract language. *Id.* at 348-49. Here, although the guaranty gave First Dakota the

authority to direct the manner of the sale of the Hotel, "as Lender in its discretion may determine," it did not provide that the Guarantors' liability would not be affected or impaired by any such sale. *See* Guaranty, GUARANTOR'S AUTHORIZATION TO LENDER (F). Furthermore, this case is factually dissimilar. Here, the Hotel has not been sold by First Dakota and First Dakota is not proceeding against the Guarantors for any deficiency. Rather, First Dakota possesses the Hotel and is seeking a judgment against each Guarantor in the amount of $3,241,883.03—the total due on the promissory note.

[¶22.] In *Victory Highway Village, Inc. v. Weaver*, the borrower defaulted on a loan with the Small Business Administration (SBA). 634 F.2d 1099, 1100 (8th Cir. 1980). Thereafter, the SBA purchased the property at a foreclosure sale and later sold the property at an auction. The sale resulted in a deficiency balance on what would have been the borrower's loan obligation. In a subsequent suit, a federal district court ruled that the SBA waived its right to collect a deficiency judgment against the borrower under Minnesota law and ordered that the borrower's indebtedness be discharged. *See Dalton Motors, Inc. v. Weaver*, 446 F. Supp. 711 (D. Minn. 1978). Two guarantors of borrower sought release from their obligation under the guaranty agreements. The guarantors relied on the fact that the SBA waived its right to collect the deficiency against the borrower and the fact that the borrower's debt was extinguished. *Victory Highway Village, Inc.*, 634 F.2d at 1100-01. The Eighth Circuit Court of Appeals held that Minnesota's waiver law did not apply to the guarantors and that the language of the guaranty contracts "were unconditional in nature" and "specific and straightforward." *Id.* at 1102. The

court, therefore, ruled "that under the provisions of the guaranty contract, even construed in light of Minnesota law, the guarantors were not discharged by the statutory waiver against a deficiency judgment from the principal[.]" *Id.* at 1103. Here, however, the Guarantors are not relying on a statutory waiver defense, there is no deficiency, and the language of the guaranty contract is different.

[¶23.] By comparison, the Guarantors direct this Court to *State Bank of Young America v. Fabel*, 530 N.W.2d 858 (Minn. Ct. App. 1995). The lender commenced foreclosure proceedings against mortgaged property and purchased the borrower's property at a sheriff's sale for slightly more than was owed on the mortgage. *Id.* at 860. Thereafter, the lender sold the property and realized a deficiency, which amount it sought to obtain from the guarantors. The guarantors moved to dismiss, claiming the proceeds of the sale extinguished the borrower's debt. The court noted that the case did not involve a situation where there was a deficiency from the foreclosure sale—the underlying debt was fully recovered. *Id.* at 863. The court further relied on the guaranty language, which did not extend the guarantors' obligation beyond the existence of principal and interest to be paid, and ruled that the guaranty could not be enforced. Similarly, here, the Guarantors guaranteed Huron Hospitality's debt—"they did not guarantee that [First Dakota] would not experience a loss in its subsequent sale of the property. Nor did they guarantee that [First Dakota] would make sound business decisions." *See id.* at 862; *First Fed. Sav. & Loan Ass'n v. Scherle*, 356 N.W.2d 894 (N.D. 1984).

[¶24.] Even so, First Dakota contends that if we affirm the circuit court's ruling, we will "create a new rule requiring any lender that commences a

foreclosure action to get a deficiency judgment against the borrower to preserve its rights under any guaranty." Our decision is controlled by the facts of this case and the language of the guaranties, which are distinguishable from the facts in *Du Quoin*, 450 N.E.2d at 348 and *Victory Highway Village, Inc.*, 634 F.2d at 1103. Because there is no debt before us that is alleged to be barred or unenforceable, the circuit court did not err when it ruled that First Dakota could not enforce the guaranties against the Guarantors and granted the Guarantors summary judgment.

[¶25.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.